■ Dennis T. Palmeri, Jr., Appellant, v Willkie Farr & Gallagher LLP, Respondent. [69 NYS3d 267]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered November 5, 2015, which, to the extent appealed from as limited by the briefs, granted defendant's motion for summary judgment dismissing the complaint, unanimously modified, on the law, to deny in part defendant's motion for summary judgment, and reinstate the first cause of action for breach of fiduciary duty, and otherwise affirmed, without costs.

In January 2001, nonparty Ramius Securities LLC hired plaintiff Dennis T. Palmeri, Jr. to serve as manager of its stock lending securities department. At some point in 2007, the

Financial Industry Regulatory Authority (FINRA)* began a regulatory investigation seeking information on the use of so called finders in Ramius's stock lending business. In December 2007, after having received information from Ramius in response to its initial requests, FINRA served both Ramius and plaintiff with letter requests for additional information regarding transactions that had included a finder's fee.

In preparing his responses to the FINRA request, plaintiff conferred with Ramius's General Counsel and its Chief Operating Officer, both of whom were attorneys. Plaintiff alleged that the GC and the COO informed him they were "there as his counsel," allegedly leading plaintiff to believe that an attorney-client relationship was formed.

Plaintiff left Ramius's employ in 2008. In early 2009, plaintiff retained defendant Willkie Farr & Gallagher LLP to represent him in connection with the FINRA investigation. Before undertaking any representation of plaintiff, defendant informed plaintiff that Ramius, which was then a client of defendant, would not accept any situation in which defendant was adverse to Ramius. At the same time, defendant noted that it did not foresee any set of circumstances in which plaintiff would be adverse to Ramius. Defendant sent plaintiff an engagement letter dated January 14, 2009; the letter made no mention of any conflict of interest arising from defendant's representation of both plaintiff and Ramius, nor did it enumerate the rights plaintiff would have if he and Ramius were to become adverse. Approximately one month afterward, in connection with the same FINRA investigation, Ramius also retained defendant to represent it and certain of its current or former employees.

On or about January 27, 2009, defendant represented plaintiff during his investigative examination before FINRA. In June 2009, however, defendant informed plaintiff that defendant could no longer represent him because of a conflict of interest concerning defendant's concurrent representation of Ramius and its current and former employees, and unilaterally terminated its representation of him on June 25, 2009. By letter dated September 23, 2009 from defendant to FINRA, defendant appeared to shift to plaintiff all or most of the responsibility for any alleged violations of FINRA's rules.

In January 2010, Ramius entered into a letter of acceptance, waiver, and consent (AWC) with FINRA; defendant negotiated the letter on Ramius's behalf. The AWC absolved Ramius and its employees of further liability.

---

* The investigation began under the auspices of the National Association of Securities Dealers, the predecessor to FINRA.

On or about December 1, 2010, FINRA commenced a disciplinary proceeding against plaintiff, alleging that he had made false and misleading statements to Ramius's chief compliance officer during the FINRA investigation, thus causing Ramius to give inaccurate responses to FINRA.

The hearing on the disciplinary proceeding was held on June 28 and 29, 2011. In the months leading up to the hearing, defendant communicated with FINRA about matters related to the hearing, such as testimony to be given by Ramius employees. Moreover, at the hearing, defendant was present on behalf of Ramius and Ramius employees who testified.

By decision dated on or about November 18, 2011, the hearing panel dismissed the complaint, finding that FINRA had failed to prove by a preponderance of the evidence that plaintiff had violated FINRA rules. The panel also determined that certain of the Ramius employees who testified were not credible. On February 15, 2013, upon FINRA's appeal, the National Adjudicatory Council for FINRA upheld the hearing panel's dismissal of the FINRA complaint against plaintiff.

In the complaint in this action, dated February 15, 2013, plaintiff asserted causes of action against defendant for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, gross negligence, professional negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing. Plaintiff alleged that defendant, during its representation of Ramius in the FINRA investigation, shifted all responsibility for any alleged violations of FINRA's rules to him, suggesting that plaintiff undertook certain wrongful actions without Ramius's knowledge. Plaintiff further asserted that defendant disclosed to FINRA his internal, privileged communications with Ramius's counsel, thus causing FINRA to assert charges against Palmieri. Moreover, plaintiff alleged that defendant disclosed information that it had learned during the time it represented him. Plaintiff also alleged that the FINRA complaint was primarily based on privileged statements he had made to counsel at Ramius, and that these statements were also disclosed during the course of Willkie's representation of Ramius after it ceased representing him.

Defendant moved under CPLR 3212 to dismiss the complaint as time-barred and for failure to state a claim. Plaintiff cross-moved for summary judgment in his favor. In its decision, which it read into the record, the IAS court found that all six of plaintiff's claims were premised on the same operative facts and sought identical monetary damages. Accordingly, the IAS court "merged" plaintiff's claims for gross negligence, breach of

contract and breach of the implied covenant of good faith and fair dealing into his legal malpractice claim, leaving for consideration only that claim and claims based on breach of fiduciary duty.

The IAS court then dismissed both claims as untimely. Because plaintiff sought purely monetary damages, the court applied the three-year statute of limitations to the breach of fiduciary duty claim, rather than the six-year period. The court held that the claim was time-barred, since plaintiff filed it in February 2013, more than three years after defendant represented him from January through June 2009.

To begin, the motion court properly dismissed plaintiff's claims for gross negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing as duplicative of his legal malpractice claim, given that they are all based on the same facts and seek the same relief (*Sun Graphics Corp. v Levy, Davis & Maher, LLP*, 94 AD3d 669 [1st Dept 2012]).

Plaintiff's claim for legal malpractice, in turn, is untimely. Claims for legal malpractice are subject to a three-year statute of limitations and accrue when the malpractice is committed, not when the client learns of it (*Lincoln Place, LLC v RVP Consulting, Inc.*, 70 AD3d 594 [1st Dept 2010], *lv denied* 15 NY3d 710 [2010]; CPLR 214 [6]). Plaintiff's legal malpractice claim first accrued on or about June 25, 2009, when defendant terminated its legal representation of him, but continued to represent Ramius in the ongoing FINRA investigation. He did not, however, file his claim until February 15, 2013, more than three years later.

In addition, the motion court correctly dismissed the claim for aiding and abetting a breach of fiduciary duty, as plaintiff is collaterally estopped from relitigating the question of whether an attorney-client relationship existed between him and his employer's in-house counsel. The identical issue was decided in the FINRA proceeding and plaintiff had a full and fair opportunity to litigate it before FINRA (*see Jeffreys v Griffin*, 1 NY3d 34, 39 [2003]; *Auqui v Seven Thirty One Ltd. Partnership*, 22 NY3d 246, 255 [2013]).

However, the IAS court should have permitted the breach of fiduciary duty claim to proceed. The IAS court correctly noted that the claim was subject to a three-year statute of limitations. The court was mistaken, however, in finding that the allegedly wrongful conduct ended on June 25, 2009, when defendant unilaterally terminated its representation of plaintiff. On the contrary, defendant's conduct extended through at least June 29, 2011, during which time it represented Ramius and

its employees in their participation at plaintiff's FINRA disciplinary hearing.

Here, plaintiff alleges not only that defendant breached its fiduciary duty when it terminated its professional relationship with him, but also when, until at least June 2011, it acted in a manner directly adverse to his interests. Where there is a series of continuing wrongs, the continuing wrong doctrine tolls the limitation period until the date of the commission of the last wrongful act (*Harvey v Metropolitan Life Ins. Co.*, 34 AD3d 364 [1st Dept 2006]; *see also Ring v AXA Fin., Inc.*, 2008 NY Slip Op 30637[U], *8 [Sup Ct, NY County 2008] [applying continuing violations doctrine to General Business Law § 349 claim where initial payments occurred outside statute of limitations but "the insurer . . . continued to bill, and (plaintiff) . . . continued to pay" within three years of filing suit]).

Here, plaintiff has presented evidence of a "continuing wrong," which is "deemed to have accrued on the date of the last wrongful act" (*Leonhard v United States*, 633 F2d 599, 613 [2d Cir 1980], *cert denied* 451 US 908 [1981]; *Harvey*, 34 AD3d at 364). Indeed, the record contains evidence sufficient to create an issue of fact as to whether defendant breached its fiduciary obligations to plaintiff after June 2009 and well into June 2011 during its ongoing representation of the Ramius parties.

For example, as noted, the record contains evidence that in the early portion of 2011, defendant helped Ramius identify witnesses who would testify against plaintiff at his FINRA disciplinary hearing. Similarly, defendant was present on behalf of Ramius and Ramius employees who testified at plaintiff's FINRA hearing on June 28 through 29, 2011—a hearing at which the employees gave testimony that was generally adverse to plaintiff's interests. This evidence is sufficient for a fact-finder to determine that defendant breached its duty of loyalty to plaintiff, a former client (*see Cooke v Laidlaw Adams & Peck*, 126 AD2d 453, 456 [1st Dept 1987] [ethical standards applying to the practice of law impose a continuing obligation upon lawyers to refuse employment in matters adversely affecting a client's interests, even if the client is a former client]).

We have considered the parties' remaining arguments and find them unavailing. Concur—Sweeny, J.P., Mazzarelli, Moskowitz and Kahn, JJ.

The decision and order of this Court entered herein on July 25, 2017 (152 AD3d 457 [2017]) is hereby recalled and vacated

(*see* 2017 NY Slip Op 96758[U] [2017] [decided simultaneously herewith]).