The People of the State of New York, by Barbara D. Underwood, Attorney General of the State of New York, Petitioner,

against
Donald Trump, DONALD TRUMP, JR., IVANKA TRUMP, ERIC TRUMP, THE DONALD J. TRUMP FOUNDATION, Respondents.


451130/2018

Attorneys for Petitioner: Barbara D. Underwood, Attorney General, and Matthew Colangelo; James Sheehan; Laura Wood; Yael Fuchs; Steven Shiffman; and Peggy Farber 
Attorneys for Respondents: Alan S. Futerfas of the Law Offices of Alan S. Futerfas


Saliann Scarpulla, J.

This judicial dissolution proceeding was commenced by the Attorney General of the State of New York on behalf of the People of the State of New York ("Petitioner") against The Donald J. Trump Foundation (the "Foundation"), and the Foundation's officers, directors, and board members: Donald J. Trump ("Mr. Trump"), Donald J. Trump Jr.; Ivanka Trump; and Eric F. Trump (collectively, the "Individual Respondents" and together with the Foundation, "Respondents").
The Foundation was incorporated in 1987 in New York as a private not-for-profit corporation as defined under Section 509(a) of the Internal Revenue Code. Its mission is to "receive and maintain a fund . . . to [be] use[d] . . . exclusively for charitable, religious, scientific, literary or educational purposes either directly or by contributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code." Mr. Trump was the founder and president of the Foundation. The remaining Individual Respondents were board members of the Foundation.
In its petition, Petitioner alleges that the Foundation and its board members have transacted business illegally and abusively over a number of years. The allegations focus on Respondents' failure to operate and manage the Foundation in accordance with corporate and statutory rules and their fiduciary obligations, resulting in the misuse of charitable assets and self-dealing. Petitioner also alleges that charitable assets, primarily consisting of money donated by outside sources, were used to promote Mr. Trump's properties, purchase personal items, advance Mr. Trump's presidential election campaign, Donald J. Trump for President, Inc. ("Campaign"), and settle certain personal legal obligations.
Based on the foregoing allegations, Petitioner pleads causes of action for: (1) breach of fiduciary duty and waste under New York's Not-For Profit Corporation Law ("N-PCL") against the Individual Respondents; (2) failure properly to administer Foundation assets and waste under New York's New York Estates, Powers and Trusts Law ("EPTL") against the Individual Respondents; (3) wrongful related party transactions against Mr. Trump as defined in the N-PCL and EPTL; (4) dissolution of the Foundation under the N-PCL §§ 112 and 1101; (5) dissolution of the Foundation under the N-PCL §§ 112 and 1102; and (6) an injunction pending resolution of the proceeding. 
Instead of answering the petition, Respondents move to dismiss pursuant to CPLR 3211(a)(5) and (a)(7) arguing that: the court lacks jurisdiction over Mr. Trump; most of the transactions supporting the claims in the petition are barred by the Statute of Limitations; Mr. Trump's televised fundraiser in Des Moines, Iowa on January 28, 2016 ("Fundraiser") cited in the petition was not a wrongful related party transaction; the Fundraiser and subsequent disbursement of money raised at the Fundraiser did not constitute prohibited political activity; Petitioner has failed sufficiently to allege breach of fiduciary duty and failure properly to administer charitable assets; Petitioner has failed [*2]adequately to allege damages; the Petitioner's "pervasive bias" against Respondents disqualifies it from maintaining this proceeding; and there is no basis for the injunctive relief sought. 
Discussion

Many of the defenses Respondents allege have broad application and pertain to more than one of Petitioner's causes of action. To the extent possible, I have first addressed these defenses.
Jurisdiction over Mr. Trump
Respondents argue that this proceeding should be dismissed against Mr. Trump because, pursuant to the Supremacy Clause, U.S. Const. art. VI, § 2, a sitting president may not be sued. In opposition, Petitioner argues that, in Clinton v. Jones, 520 U.S. 681 (1997), the Supreme Court of the United States specifically rejected Mr. Trump's argument. Petitioner notes that Respondents have failed to cite a single case in which any court has dismissed a civil action against a sitting president on Supremacy Clause grounds, where, as here, the action is based on the president's unofficial acts. In an Amicus Curiae brief submitted in this proceeding, several professors also argue that Mr. Trump is not immune from civil suit in state court for actions he takes in his unofficial capacity.[FN1]

In Clinton v. Jones, the Supreme Court held that the doctrine of separation of powers does not bar a federal suit (including state law claims) against a sitting president. 520 U.S. 681 (1997). Specifically, the Supreme Court held that the president does not have immunity and is "subject to the laws" for unofficial acts. Id. at 695-696 (stating that President Clinton's "effort to construct an immunity from suit for unofficial acts grounded purely in the identity of his office is unsupported by precedent.").
Although the Supreme Court noted that the Supremacy Clause prohibits state courts from exercising "direct control" over federal officers in a way that interferes with their federal responsibilities, this concern is only relevant in cases relating to the execution of federal law. Id. at 691 n.13. Here, the allegations raised in the Petition do not involve any action taken by Mr. Trump as president and any potential remedy would not affect Mr. Trump's official federal duties.
Respondents raise three other points in support of their argument that this court lacks jurisdiction over Mr. Trump. First, Respondents argue that state court proceedings should not be permitted against sitting presidents because they can reflect "local prejudice" against "unpopular" federal officials. State courts, however, possess the same ability as federal courts to dismiss vexatious lawsuits. As the Supreme Court stated in Clinton v. Jones, "the availability of sanctions provides a significant deterrent to litigation directed at the President in his unofficial capacity for purposes of political gain or harassment." 520 U.S. at 708-709 (further positing that "[h]istory indicates that the [*3]likelihood that a significant number of such cases will be filed is remote.").
Second, Respondents argue that federal courts are better able to manage cases against a sitting president to avoid interfering with official duties. This argument is meritless. A state court action does not impose any greater burden on a sitting president than a federal court action. State courts are equally capable of "accommodat[ing] the President's needs" and "of giving 'the utmost deference to Presidential responsibilities.'" Clinton, 520 U.S. at 709 citing United States v. Nixon, 418 U.S. 683, 710-711 (1974); see also Zervos v. Trump, 59 Misc 3d 790, 797 (Sup. Ct. NY Co. 2018).
Finally, Respondents argue that federal courts are better suited to address legal issues that arise in cases against federal officials. The dissenting opinion that Respondents cite for this proposition simply noted that federal courts have greater expertise than state courts in applying federal law. See Preiser v. Rodriguez, 411 U.S. 475, 514 (1973) (Brennan, J., dissenting). Here, resolution of the petition is governed entirely by New York law, thus a federal court's alleged superior knowledge of federal law is inapposite.
Allowing this action to proceed is entirely consistent with the Supreme Court's holding in Clinton v. Jones that the President of the United States is "subject to the laws for his purely private acts." Clinton, 520 U.S. at 696. Judge Schecter of the New York Supreme Court reached the same determination and rejected Mr. Trump's jurisdiction-based dismissal arguments in Zervos, 59 Misc 3d at 797 (concluding that, "there is absolutely no authority for dismissing or staying a civil action related purely to unofficial conduct because defendant is the President of the United States.").[FN2]

In accordance with Clinton v. Jones and Zervos v. Trump, I find that I have jurisdiction over Mr. Trump and deny Respondents' motion to dismiss the petition against him on jurisdictional grounds.
Statute of Limitations
Respondents argue that the transactions in the petition that occurred more than six years before the petition was filed must be excluded as time-barred. Specifically, allegations concerning the 2007 donation of $100,000 to the Fisher House Foundation (the "Fisher House Transaction"), and allegations concerning the February 14, 2012 donation of $158,000 to the Martin B. Greenberg Charitable Foundation (the "Greenberg Transaction") are barred by the six-year statute of limitations. 
Respondents further maintain that the transactions that occurred more than three years before the petition was filed must also be excluded because the relief sought for those transactions is primarily monetary damages, and therefore, the three-year statute of [*4]limitations bars consideration of those transactions.
In response, Petitioner argues that, because most of the relief it seeks is equitable and most of its allegations relate to misconduct that occurred within the six-year time period before the petition was filed, the statute of limitations does not bar consideration of those transactions. It further contends that the allegations relating to misconduct that occurred prior to the six-year period before the petition was filed are not barred because of the continuing wrong doctrine. 
Petitioner maintains that, in any event, the statute of limitations on a breach of fiduciary duty claim does not begin to run until the fiduciary has openly repudiated the fiduciary relationship or it has been otherwise terminated, which has only recently occurred with respect to only some of the Individual Respondents. Finally, Petitioner asserts that the claims seeking monetary relief are only related to conduct that occurred within three years of the start of this proceeding, and therefore, are not time barred.
In moving to dismiss an action as barred by the statute of limitations, a moving defendant bears the initial burden of demonstrating that the time within which to commence the cause of action has expired. Norddeutsche Landesbank Girozentrale v. Tilton, 149 AD3d 152 (1st Dept. 2017). The burden then shifts to the plaintiff to raise a question of fact as to whether the statute of limitations is tolled or is otherwise inapplicable, or whether plaintiff commenced the action within the limitations period. See Wilson v Southampton Urgent Med. Care, P.C., 112 AD3d 499 (1st Dept. 2013).
Pursuant to CPLR 214(2), causes of action alleging a statutory violation have a three-year statute of limitations. Causes of action alleging breach of fiduciary duty are governed by a three-year statute of limitations when only monetary damages are sought, and a six-year statute of limitations when equitable relief is sought. See Yatter v. William Morris Agency, 256 AD2d 260 (1st Dept. 1998); Lemle v. Lemle, 2017 NY Slip. Op. 30811(U) (Sup. Ct. NY Co., April 20, 2017). 
In addition, the limitations period for claims arising out of a fiduciary relationship is tolled until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated. See Lemle v. Lemle, 2017 NY Slip. Op. 30811(U) (Sup. Ct. NY Co., April 20, 2017). This toll can apply when a mix of equitable relief and monetary damages are sought and can apply to claims brought by the Attorney General. See People v. Ben, 55 AD3d 1306 (4th Dept. 2008). 
Further, the continuing wrong doctrine "is usually employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." Selkirk v. State, 249 AD2d 818, 819 (3d Dept. 1998); see also Palmeri v. Willkie Farr & Gallagher LLP, 156 AD3d 564 (1st Dept. 2017). The continuing wrong doctrine applies to a variety of types of cases including breach of contract, breach of fiduciary duty, and statutory violations. See generally King v. 870 Riverside Dr. Hous. Dev. Fund Corp., 74 AD3d 494 (1st Dept. 2010); Matter of Janke v. Community School Bd. of Community School Dist. No. 19, 186 AD2d 190 (2d Dept. 1992). 
Here, Petitioner's allegations set forth a continuing wrong, i.e. Respondents' alleged continuous and pervasive failure to operate and manage the Foundation in accordance with corporate and statutory rules and fiduciary obligations, resulting in the misuse of charitable assets and self-dealing, starting with the Fisher House Transaction and continuing in the years thereafter. Further, Petitioner seeks both monetary and equitable relief, and many of the allegations are within the six-year statute of limitations.
At this pre-answer stage of the proceedings, Respondents have not demonstrated as a matter of law that the transactions set forth in the petition are barred by the statute of limitations. I therefore deny dismissal of any part of the petition on this ground.
Bias

Respondents contend that due to the appearance of impartiality and the evidence of actual bias by the former Attorney General, Eric Schneiderman, and the Attorney General's office as a whole, the petition should be dismissed. They claim that the Attorney General's animus toward and personal attacks on the Respondents tainted the investigation of the Foundation and Petitioner's continued prosecution of the proceeding.
In response, Petitioner argues that this proceeding, which was commenced after Eric Schneiderman left office, is based on a legitimate, thorough investigation by the Charities Bureau that revealed illegal and unethical activity by the Respondents. Petitioner denies that the proceeding was commenced based upon bias or animus.
It is not within the province of the courts to subjectively determine the motivation of a government agency in commencing an enforcement proceeding, or to dismiss the proceeding because of the political disagreements of the parties. Instead, it is my responsibility to review the petition to see if it has legal and factual support, and if it does, to resolve it.
"[C]ourts, as a general rule, should remove a public prosecutor only to protect a defendant from actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence." Schumer v. Holtzman, 60 NY2d 46, 55 (1983). After reviewing the allegations set forth in the petition, I find that Respondents have not stated a sufficient evidentiary basis to support an allegation of a demonstrated conflict of interest or a substantial risk of an abuse of confidence, and also have not shown that the investigation presents the "rare situation[ ]" in which "the appearance of impropriety itself is a ground for disqualification." People v. Adams, 20 NY3d 608, 612 (2013).
Finally, given the very serious allegations set forth in the petition, I find that there is no basis for finding that animus and bias were the sole motivating factors for initiating the investigation and pursuing this proceeding. See generally People v. Cain (Michael), 2017 NY Misc. LEXIS 2469 (NY App. Term., June 22, 2017). For these reasons, I decline to dismiss the proceeding because of the alleged political bias of Petitioner.
Breach of Fiduciary Duty/ Failure to Properly Administer
Charitable Assets and Waste (First and Second Causes of Action)
In its first and second causes of action, Petitioner alleges that the Individual Respondents breached their fiduciary duties and failed properly to administer the Foundation's assets by, among other things: failing to ever hold a board meeting or to keep required board minutes; failing to conduct reviews of the Foundations assets, liabilities, revenues and disbursements; failing to oversee the Foundation and its activities; failing to supervise the Trump Organization accounting staff [FN3]
; permitting non-Foundation members to disburse Foundation assets without review or approval; permitting Mr. Trump to solicit donations that went directly to the Foundation; and subsequently giving control over the donated funds to the Campaign which, in turn, distributed the funds so as to influence the outcome of Mr. Trump's presidential bid. 
The Attorney General is authorized, pursuant to New York Not-For-Profit Corporation Law ("N-PCL") § 720(a), to bring an action against officers and directors:
(1) To compel the defendant to account for his official conduct in the following cases:
(A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.
(B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.
Under N-PCL § 717, "[d]irectors and officers shall discharge the duties of their respective positions in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances." Section 717 also requires directors and officers of a not-for-profit corporation to act with undivided loyalty toward the corporation. See also Birnbaum v. Birnbaum, 73 NY2d 461, 466 (1989) (holding that "it is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect").
In addition, New York Estates, Powers and Trusts Law ("EPTL") § 8-1.4 empowers the Attorney General to "investigate transactions and relationships of trustees for the purpose of determining whether or not property held for charitable purposes has been and is being properly administered." The First Department has held that the EPTL § 8—1.4 supervisory power over charitable corporations enables the Attorney General "to enjoin [charitable foundations] from soliciting funds improperly." Abrams v. New York Found. For the Homeless, 190 AD2d 578, 578 (1st Dept. 1993). EPTL 8-1.8(a)(5) provides that "the [Foundation] shall not make any taxable expenditures which would [*5]result in the liability of the [Foundation] for any tax imposed on any such taxable expenditures under 4945 of the code."
Here, the Individual Respondents were each directors of the Foundation, and therefore owed fiduciary duties to the Foundation under N-PCL § 717. As directors of the Foundation, the Individual Respondents were also trustees of charitable assets pursuant to EPTL § 8-1.4 and thus were responsible for the proper administration of charitable assets.
As discussed above, Petitioner details numerous alleged acts and omissions by the Individual Respondents that would constitute failure to discharge their fiduciary duties. These allegations, taken together, adequately state a claim for breach of fiduciary duty.
The Individual Respondents do not dispute the bulk of the allegations concerning Foundation oversight which underlie these two causes of action. Respondents do contend, however, that the part of Petitioner's causes of action for breach of fiduciary duty and failure to properly to administer Foundation assets which rely on a claim of waste must be dismissed, because there was no loss or waste of Foundation assets as a matter of law.[FN4]
The Respondents define "waste" — without any caselaw support — as occurring only when a charity's assets are used for non-charitable purposes. Respondents then conclude that because the Foundation's funds were eventually disbursed to charities, there was no waste, and therefore I may not order equitable relief for breach of fiduciary duty/failure properly to administer Foundation assets premised on allegations of wasted assets.
Contrary to Respondents' contention, "[t]he essence of a waste claim is 'the diversion of corporate assets for improper or unnecessary purposes.'" SantiEsteban v. Crowder, 92 AD3d 544, 546 (1st Dept. 2012) citing Aronoff v. Albanese, 85 AD2d 3, 5 (2d Dept. 1982); Schneiderman ex rel. People v. Lower Esopus River Watch, Inc., 2013 WL 3014915, at *26, 39 Misc 3d 124(A) (Sup. Ct. Ulster Co. Apr. 8, 2013). Under this definition of waste, the inquiry does not end simply because the ultimate beneficiary of the assets was a charity. Instead, waste may still be found when assets were utilized improperly or unnecessarily in breach of fiduciary duty, even if the ultimate beneficiary of the assets was a charity. For example, in In the Matter of the Investigation of the Homeland Foundation, Inc., Assurance of Discontinuance ("AOD") No. 15-172, dated Sept. 1, 2015 (the "Homeland case"), one of the Attorney General's findings was that the trustees breached their fiduciary duties by making grants that were tainted by conflicts of interest, notwithstanding that the grant recipients were charitable organizations.
Petitioner alleges here that the Foundation's funds were disbursed improperly, even [*6]though the funds may have ultimately ended up with charitable organizations. Thus, for example, Petitioner claims that the Individual Respondents ceded control over the Foundation's assets to the Campaign and failed to ensure that the assets were properly disbursed, as their fiduciary duties required them to do. 
Further, the Petition is replete with allegations of Foundation funds being used for improper purposes, including that: 1) in the case of the Fisher House Transaction and Greenberg Transaction, grants were made to settle the legal obligations of Mr. Trump and his for-profit companies; 2) Mr. Trump instructed the Foundation to convert tax-exempt contributions into campaign funds that were used by the Campaign to make grants aimed at helping Mr. Trump's presidential race; and 3) the Foundation's distributions of the Fundraiser proceeds were directed by the Campaign rather than being based on objective criteria determined by the Individual Respondents. 
Respondents also argue that the breach of fiduciary duty/failure properly to administer Foundation assets causes of action must be dismissed because the Foundation suffered no damages. Respondents point out that the Foundation has already been reimbursed for six individual donations, with excise taxes already paid, thus Petitioner's damages claim is moot.[FN5]
First, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e. does not make the case moot." United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953). 
Moreover, Petitioner also requests restitution for the $2.8 million in charitable assets given by the Foundation to the Campaign for distribution, as well as an order pursuant to N-PCL § 715(f) and EPTL § 8-1.9(c), requiring Mr. Trump "to pay a penalty for willful and intentional conduct, in an amount up to double the value of transactions that occurred after July 1, 2014 - the Seven Springs Transaction and the expenditures on behalf of the Trump Campaign." Lastly, in addition to money damages Petitioner also seeks bars on future service by the Individual Respondents and dissolution of the Foundation. Petitioner has therefore adequately pled a demand for damages other than the funds reimbursed to the Foundation, and the breach of fiduciary duty/failure properly to administer Foundation assets causes of action are not moot for lack of damages. 
That the Foundation's assets may have ultimately ended up in charitable organizations is a factor to be considered when considering the measure of damages, if any, to be awarded Petitioner, but that alone does not defeat Petitioner's causes of action for breach of fiduciary duty/failure properly to administer the Foundation's assets. At this stage of the litigation, the Petition sufficiently alleges breach of fiduciary duty/failure properly to administer Foundation assets and damages resulting therefrom. For the [*7]foregoing reasons, I deny Respondents' motion to dismiss the first and second causes of action.
Wrongful Related Party Transaction (Third Cause of Action)
In the third cause of action, Petitioner alleges that Mr. Trump caused the Foundation to enter into transactions in which he had a financial interest without obtaining authorization from the Board for the transactions, or a determination by the Board that the transactions were in the Foundation's best interest. Petitioner alleges that Mr. Trump's actions were willful and intentional pursuant to N-PCL § 715(f)(4) and EPTL § 8-1.9(c)(4)(D).
N-PCL § 715 prohibits a private foundation from entering "into any related party transaction unless the transaction is determined by the board . . . to be fair, reasonable and in the corporation's best interest . . . . Any director, officer or key person who has an interest in a related party transaction shall disclose in good faith to the board . . . the material facts concerning such interest." EPTL § 8-1.9 provides an identical prohibition against related party transactions vis-a-vis trusts, and the parties do not dispute that both statutes are applicable. See EPTL § 8-1.9(c). A related party transaction is defined as "any transaction, agreement or any other arrangement in which a related party has a financial interest and in which the corporation or any affiliate of the corporation is a participant[.]" N-PCL § 102(a)(24); see also EPTL § 8-1.9(a)(8).
In the petition, Petitioner's allegations of recent wrongful related party transactions focus most heavily on the Fundraiser. Mr. Trump allegedly held the Fundraiser instead of participating in a televised Republican primary debate. The Fundraiser occurred four days before the Iowa Republican caucuses. Notably, as of the time of the Fundraiser, Mr. Trump had allegedly loaned the Campaign $17.5 million to self-fund his presidential bid. 
Petitioner alleges that contrary to the Foundation's October 20, 2016 Amended Registration Statement for Charitable Organizations submitted to the Attorney General's Charities Bureau [FN6]
, the Fundraiser was a Campaign event organized and directed by the Campaign, with administrative assistance from the Foundation. Thus, Campaign staff, not the Foundation, purportedly managed an online ticket page and arranged for speakers to attend the Fundraiser. Trump Organization personnel and the Campaign's consultant allegedly worked together to create a website for the Foundation to receive donations from the Fundraiser, DonaldTrumpForVets.com. The Fundraiser allegedly raised $5.6 million, $2.823 million of which was donated to the Foundation, which was then [*8]supposed to be disbursed by the Foundation to charity organizations.[FN7]
The remaining funds were purportedly donated directly by the donors to the charity organizations.
Petitioner alleges that, although the Foundation received the donations, it did not distribute them. In fact, the Foundation allegedly played no role in distributing the donations. Rather, the Campaign chose the recipient organizations, how much, and when the recipient would receive the funds.[FN8]
Allegedly, the Campaign instructed Trump Organization personnel to issue Foundation checks to the grant recipients. At least one grant check was purportedly sent by a Campaign staff member to a grant recipient.
The Campaign and Mr. Trump presented enlarged versions of Foundation grant checks to recipients at several campaign rallies in Iowa in the days prior to and on the day of the Republican caucuses. When awarding a check at a Campaign rally on January 30, 2016, Mr. Trump allegedly referred to the check as "our first disbursement."[FN9]

On May 31, 2016, Mr. Trump purportedly hosted a press conference to address reports that the Foundation failed to disburse all funds received from the Fundraiser. During that press conference, Mr. Trump allegedly compared his fundraising efforts on behalf of veterans to those of his political opponent, Hilary Clinton. Mr. Trump also allegedly invited Al Baldasaro — a Republican member of the New Hampshire legislature who previously worked on the Campaign — to speak at this press conference. During his speech, Al Baldasaro allegedly endorsed Mr. Trump's candidacy repeatedly.
Respondents argue that the above-stated allegations (as well as others set forth in [*9]the petition) fail to make out a claim that Mr. Trump violated N-PCL § 715 and EPTL § 8-1.9 as a matter of law, and further that Mr. Trump did not willfully violate these statutes as a matter of law. Respondents focus on whether the Fundraiser may be considered a related party transaction and whether Mr. Trump's actions may be considered willful.[FN10]

The Fundraiser as a Related Party Transaction
Respondents first argue that the Campaign is not a "transaction" within the meaning of N-PCL § 102(a)(24) and EPTL § 8-1.9(a)(8). However, a related party transaction includes "any transaction, agreement or any other arrangement." N-PCL § 102(a)(24) (emphasis added); EPTL § 8-1.9(a)(8) (same). Review of the statutes' legislative history demonstrates that the legislature amended both statutes in 2014 to strengthen New York law and deter self-dealing by encouraging active board management. See Senate Introducer's Mem in Support, Bill Jacket, 2013 A.B. 8072, ch 549 at 11. ("[M]aintaining the public's trust . . . requires that boards provide effective oversight over the charitable funds entrusted to them, and that the Attorney General have the necessary tools to protect charities and donors from fraud and abuse."). 
Given the statutes' strong remedial purpose, I interpret "any other arrangement" as including all circumstances in which self-dealing may occur, regardless of whether the circumstances are considered a typical "transaction." This broad, remedial language includes circumstances like those alleged in the petition, where a private individual uses a private charitable foundation to advance the individual's personal interest without payment.
Moreover, the petition does not allege that the Campaign alone is a related party transaction. Instead, the petition alleges that the Campaign exploited its control of Foundation assets by dictating when and to which charities the Foundation distributed donations that it received from the Fundraiser to advance Mr. Trump's presidential bid. I find that such allegations fall within the broad meaning of "any transaction, agreement or any other arrangement[.]" N-PCL § 102(a)(24); EPTL § 8-1.9(a)(8).
Respondents next argue that neither the Foundation nor Mr. Trump is a "participant" in a related party transaction because, according to Respondents, the Foundation was a passive recipient of donated funds and never directly contributed money to the Campaign. However, the petition alleges that the Foundation issued grants at Mr. Trump's and the Campaign's direction without the Foundation's independent oversight, and with the specific intent to advance Mr. Trump's presidential bid. The petition further alleges that this arrangement amounted to an in-kind contribution and is a gift under New York law. Here again, that the donated funds ultimately went to [*10]charitable organizations does not, by itself, refute a claim that the Campaign used the Foundation's funds to garner votes for Mr. Trump. 
Respondents also argue that Mr. Trump has no "financial interest" in the alleged arrangement because publicity is an incidental nonmonetary benefit. As support, Respondents cite the Internal Revenue Code's definition of self-dealing. See 26 USC § 4941. Section 4941(d)(1)(E) of the Internal Revenue Code defines self-dealing, in part, as "any direct or indirect . . . transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a private foundation," which excludes incidental or tenuous benefits. See 26 CFR 53.4941(d)-2 (f)(2). "Thus, the public recognition a person may receive, arising from the charitable activities of a private foundation to which such person is a substantial contributor, does not in itself result in an act of self-dealing since generally the benefit is incidental and tenuous." 26 CFR 53.4941(d)-2 (f)(2).
Unlike the incidental public recognition contemplated by 26 CFR 53.4941(d)-2 (f)(2) which raises someone's general profile, here the petition alleges that, by using the Foundation's assets, the Campaign garnered expensive, vote-getting publicity that Mr. Trump would have otherwise paid for himself.[FN11]
The petition thus sufficiently alleges that Mr. Trump's interest in the alleged acts of self-dealing were financial in nature and were substantial.
In sum, the petition adequately alleges a related party transaction, sufficient to support the third cause of action against Mr. Trump, and also the first two causes of action to the extent that the Individual Respondents allegedly failed to prevent the alleged related party transaction.
Allegations of Willful and Intentional Conduct
Finally, the parties dispute the meaning of "willful and intentional conduct" in N-PCL § 715(f)(4) and EPTL § 8-1.9(c)(4)(D), which grants the Attorney General authority to seek, "in the case of willful and intentional conduct, an amount up to double the amount of any benefit improperly obtained."
Petitioner seeks double damages because Mr. Trump's conduct as to the alleged related party transaction was willful and intentional. Respondents argue that Petitioner may not seek double damages because, under New York law, willful and intentional conduct requires that Respondents were aware that their conduct was unlawful, and Petitioner is unable to establish that Mr. Trump knew his conduct was a prohibited related party transaction.
Petitioner alleges that Mr. Trump signed Foundation checks, which he intentionally presented at Campaign rallies. The petition further alleges that Foundation checks were drawn up at Mr. Trump's and the Campaign's direction. These allegations sufficiently support a claim that Mr. Trump intentionally used Foundation assets for his private interests knowing that it may not be in the Foundation's best interest. 
For the foregoing reasons, I find that the petition adequately alleges a cause of action for a wrongful related party transaction. 
Judicial Dissolution of the Foundation (Fourth and Fifth Causes of Action)
Respondents argue that judicial dissolution of the Foundation is unwarranted because the Foundation has been attempting to voluntarily dissolve for the past two years. I have been actively encouraging the parties to resolve the dissolution aspect of this proceeding without court intervention, but they have been unable to do so. 
Nevertheless, Respondents fail to demonstrate a basis to strike the Petitioner's request for injunctive relief. At this juncture, it would be premature to determine whether the Petitioner will be entitled to judicial dissolution of the Foundation, and the terms of which dissolution will be based. See generally People v. Merkin, 26 Misc 3d 1237(A) (Sup. Ct. NY Co., 2010). I again urge the parties to agree to the terms of dissolution of the Foundation without judicial intervention.
The Fundraiser as Prohibited Political Activity
As an additional basis to support the claims for dissolution, as well as the claims already discussed herein, Petitioner alleges that the Foundation engaged in prohibited political activity. Respondents argue that, to the extent Petitioner's causes of action are based on such allegations, no relief is warranted for failure to allege prohibited political activity in violation of 26 USC § 501(c)(3). 
The Foundation is a private foundation, as defined by the Internal Revenue Code, and its Certificate of Incorporation provides that it "shall be organized and operated exclusively for the purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1954." Incorporating the language of 26 USC § 501(c)(3), ¶7 of the Foundation's Certificate of Incorporation provides that "[n]o part of the activities of the [Foundation] shall be carrying on propaganda or otherwise attempting to influence legislation or participating or intervening in (including the publication or distribution of statements) any political campaign on behalf of any candidate for public office."
The Foundation is similarly prohibited from "mak[ing] any taxable expenditures as defined in Section 4945(d) of the Internal Revenue Code of 1954 or corresponding provisions of any subsequent Federal tax laws." Certificate of Incorporation ¶8(e); N-PCL § 406(a)(5); EPTL § 8-1.8(a)(5). 26 USC § 4945 defines taxable expenditures, in part, as "any amount paid or incurred by a private foundation to . . . carry on propaganda, or otherwise attempt, to influence legislation . . .," 26 USC 4945(d)(1), or "to influence the outcome of any specific public election." 26 USC 4945(d)(2).
The prohibition on a tax-exempt organization from engaging in prohibited political activity to influence the outcome of an election is virtually the same under 26 USC § 501(c)(3) and 26 USC § 4945.[FN12]
Determining whether an organization engaged in [*11]prohibited political activity by "participating or intervening, directly or indirectly, in any political campaign on behalf of or in opposition to any candidate for public office depends upon all of the facts and circumstances of each case." Rev. Rul. 2007-41, 2007-1 CB 1421 (2007) (hereinafter, "Rev. Rul. 2007-41").
Here, the petition alleges that Mr. Trump and the Campaign had complete control over the Foundation and used the Foundation to advance Mr. Trump's presidential bid. 
The petition also alleges that the Foundation ceded control and discretion over the donations received from the Fundraiser to the Campaign. Cf. Rev Rul 68-489, 1968-2 CB 210 (1968) (organization's distributions to not exempt organizations "did not jeopardize the organization's exemption under section 501(c)(3)" where that organization "retain[ed] control and discretion as to the use of the funds and maintained records establishing that the funds were used for section 501(c)(3) purposes"). All of these services, assets, and resources were allegedly offered exclusively to the Campaign to assist Mr. Trump's candidacy and further his political goals.
Respondents argue that Mr. Trump was acting in his individual capacity — not on behalf of the Foundation — at the Fundraiser and subsequent rallies. Although an organization's leaders may attend political functions in their individual capacity, "for their organizations to remain tax exempt under section 501(c)(3), leaders cannot make partisan comments in official organization publications or at official functions of the organization." Rev. Rul. 2007-41.[FN13]
 
The allegations in the petition which purport to quote Mr. Trump at the Fundraiser, rallies, and press conference show that Mr. Trump was acting in both of his capacities as campaign candidate and president of the Foundation. Moreover, considering the allegations of coordination between the Campaign and Foundation, as well as the control and authority that Mr. Trump and the Campaign allegedly wielded over the Foundation, the petition adequately alleges that the political acts by Mr. Trump and the Campaign are attributable to the Foundation. 
Injunction Pending Resolution (Sixth Cause of Action)
In the sixth cause of action, Petitioner seeks a preliminary injunction enjoining [*12]Individual Respondents from operating the Foundation pending resolution of this proceeding. As stated above, Respondents are trying voluntarily to dissolve the Foundation, thus the sixth cause of action is moot, and I dismiss it. 
In accordance with the foregoing, it is hereby
ORDERED that the motion of respondents The Donald J. Trump Foundation, Donald J. Trump, Donald J. Trump Jr., Ivanka Trump, and Eric F. Trump to dismiss the petition is denied except as to the sixth cause of action; and it is further
ORDERED that the sixth cause of action is dismissed; and it is further
ORDERED that the respondents are directed to answer the petition within forty-five (45) days of the date of this order.[FN14]

This constitutes the decision and order of the court.
November 21, 2018



Footnotes

Footnote 1:The Amici Curiae authors are law professors Stephen B. Burbank, Richard D. Parker and Lucas A. Powe Jr.


Footnote 2:Mr. Trump appealed the Zervos decision and the First Department held oral argument on the appeal on October 18, 2018. As I noted during the oral argument on this motion, if the First Department reverses the Zervos decision, then I must dismiss the petition against Mr. Trump and will likely ask the Attorney General to re-plead against the remaining Respondents.

Footnote 3:The petition alleges that the Trump Corporation, Inc. ("Corporation") — a management company owned by Mr. Trump — provides back-office services to the hundreds of business entities that comprise the Trump Organization (the "Organization"), including the Foundation. The Foundation allegedly does not have any of its own employees, and its operations are mainly performed by the Corporation's accounting staff. Purportedly, the Corporation was responsible for issuing checks from the Foundation, which it did based solely upon direction from Mr. Trump and without Board approval.


Footnote 4:The Individual Respondents' also contend that the part of Petitioner's claim against the Individual Respondents for breach of fiduciary duty/failure properly to administer Foundation assets based on the Fundraiser should be dismissed because the Fundraiser was not a related party transaction and did not constitute political activity. I address that contention below.

Footnote 5:Respondents aver that "in an abundance of caution," the Foundation was reimbursed with interest for the following donations: (1) the Fisher House Transaction; (2) the Greenberg Transaction; (3) a 2013 DC Preservation League donation; (4) a 2013 "And Justice for All" payment; (5) a 2014 Unicorn Children's Foundation donation; and (6) a 2015 North American Land Trust donation.

Footnote 6:In response to the form's question asking the date that the Foundation began soliciting contributions in New York State, the Foundation stated that "[o]n January 28, 2016, [the Foundation] held a nationally televised fundraiser in Iowa to raise funds for veterans' organizations. In connection with this fundraiser, the Foundation also created a website to allow donors to make charitable contributions online." 


Footnote 7:The petition includes a picture of Mr. Trump, purportedly at the Fundraiser. The podium from which Mr. Trump is pictured has a sign on the front of it, which states the following: "DonaldTrumpforVets.com / TRUMP / Des Moines, Iowa / MAKE AMERICA GREAT AGAIN!" "Make America Great Again" is a ubiquitous campaign slogan used by Mr. Trump during his 2016 presidential election campaign.


Footnote 8:For example, the petition alleges that, at a January 31, 2016 Campaign rally, Mr. Trump awarded a check to an organization before the Foundation knew that the organization was selected as a grant recipient. Purportedly, the Campaign later requested that the Foundation issue a check, which it did on February 10, 2016.


Footnote 9:At a February 1, 2016 Campaign rally, Mr. Trump allegedly stated:
In lieu of the [Republican presidential primary] debate, I said let's have a rally for the veterans. . . . At that rally, we raised in one hour six million dollars. . . . So what we did, we raised this money, and we are giving it out, and we just gave out a check for a hundred thousand dollars a little while ago, and we are giving out another check, and they can bring it up and we are going to deliver it right here. . . . We have so many of these checks. They are all over the place. We are giving them out. This was in lieu, and, by the way, the poll numbers just came down from New Hampshire, I went through the roof. I think they respect the fact that I, that we stand up for our rights . . . . So, congratulations to Mulberry Street.


Footnote 10:Respondents also argue that, because the Petition does not adequately allege that Mr. Trump engaged in a wrongful related party transaction, to the extent that the first and second causes of action against the Individual Respondents are based upon the Individual Respondents' failure to prevent Mr. Trump from participating in the related party transaction, those causes of action must be dismissed.


Footnote 11:Notably, Trump allegedly received publicity for donations from third parties and not as a substantial contributor.

Footnote 12:Compare 26 CFR 1.501(c)(3)-1(b)(3)(ii) ("An organization is not organized exclusively for . . . exempt purposes if its articles expressly empower it" to "[d]irectly or indirectly to participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of or in opposition to any candidate for public office[.]"), with 26 CFR 53.4945-3 ("an organization shall be considered to be influencing the outcome of any specific public election if it participates or intervenes, directly or indirectly, in any political campaign on behalf of or in opposition to any candidate for public office").


Footnote 13:Cf. Rev. Rul. 2007-41, Situation 5 (no campaign intervention where minister made statement at press conference and endorses candidate where, although minister did not specify whether he is speaking in his individual or professional capacity, he "did not make the endorsement at an official church function, in an official publication or otherwise use the church's assets") (emphasis added). 


Footnote 14:In their moving papers, Respondents request to conduct discovery. Disclosure is available in a special proceeding only by leave of court. See CPLR 408. "Among the factors weighed are whether the party seeking disclosure has established that the requested information is material and necessary, whether the request is carefully tailored to obtain the necessary information and whether undue delay will result from the request[.]" Suit-Kote Corp. v Rivera, 137 AD3d 1361, 1365 (3d Dept. 2016). Respondents have failed to demonstrate any deficiency in the record that would make discovery necessary, particularly because the purported discovery Respondents seek is within their knowledge and control. Regarding discovery as to the Attorney General's bias, I found irrelevant Respondents' bias argument for dismissal and therefore, discovery on bias is also irrelevant and would only serve to unnecessarily delay the proceeding.