[38 NYS3d 159]

Leonid Lebedev, Respondent, v Leonard Blavatnik et al., Appellants.

First Department, October 4, 2016

## APPEARANCES OF COUNSEL

*Quinn Emanuel Urquhart & Sullivan, LLP*, New York City (*Stephen Broome, Richard I. Werder, Jr., David Elsberg* and *Ron Hazgiz* of counsel), for Leonard Blavatnik, appellant.

*White & Case LLP*, New York City (*Paul B. Carberry, Owen C. Pell* and *Isaac S. Glassman* of counsel), for Viktor Vekselberg, appellant.

*Steptoe & Johnson LLP*, New York City (*Michael C. Miller, Evan Glassman* and *Charles Michael* of counsel), and *Dewey Pegno & Kramarsky LLP*, New York City (*Thomas E. L. Dewey, Keara Bergin* and *Tamara Bock* of counsel), for respondent.

## OPINION OF THE COURT

Saxe, J.

On this appeal, defendants challenge the denial of their CPLR 3211 motion insofar as it sought to dismiss plaintiff's first, second and third causes of action as barred by the statute of limitations. Since for purposes of this analysis we must accept as true the allegations of the complaint (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), the factual assertions that follow are derived from the complaint.

In 1997, Russia privatized a state-owned oil and gas company, Tyumen Oil Company (TNK), and defendants led an investment group that successfully bid on a 40% share of TNK. As part of this arrangement, they were required to pay $25 million in cash and to acquire a production company related to TNK, Nizhnevartovskneftgaz OAO (NNG). Defendants approached plaintiff, who already indirectly owned 1.8% of TNK

and 10.5% of NNG, and the parties agreed to create a joint venture that they would own in equal shares and through which they would obtain control of TNK. Pursuant to that agreement, plaintiff would provide $25 million in cash, as well as his equity interest in TNK and NNG, as well as expertise in operating an oil and gas company.

In 2001, the parties met in New York to formally document the terms of their joint venture, and created a written draft investment agreement. The 2001 agreement provided that plaintiff would own 15% of "the aggregate share of the Parties in the Oil Business," which was defined as the ownership position held by the parties' joint venture company, Oil and Gas Industrial Partners Ltd. (OGIP), in various affiliates of TNK. Plaintiff was also "entitled to receive 15% (fifteen percent) of the net income earned by OGIP."

While this written agreement was signed by plaintiff and defendant Viktor Vekselberg, defendant Leonard Blavatnik did not sign the agreement because he was unexpectedly called out of town. However, Vekselberg assured plaintiff that Blavatnik would honor the agreement, and plaintiff alleges that Blavatnik thereafter acted in accordance with the 2001 agreement. One of those acts was to cause OGIP to issue a $200 million promissory note, as security for future dividend payments, to a company nominated by plaintiff; another was the payment in 2002 and 2003 of over $13 million in dividends on OGIP's behalf from a holding company owned by Blavatnik.

Sometime in 2002, defendants commenced negotiations with British Petroleum (BP) about a potential joint venture combining TNK's operations in Russia with that of BP. By early 2003, defendants announced a consortium with TNK's other owners, and declared their intent to enter into a joint venture agreement between the consortium and BP (TNK-BP). Plaintiff was to have a 7.5% share of the consortium, and, since a memorandum of understanding established that the consortium and BP would each own half of the joint venture, plaintiff would own a 3.75% stake in this proposed TNK-BP joint venture.

After the memorandum of understanding was signed, defendants informed plaintiff that they had concealed his ownership interest in the consortium from BP, "out of concern that BP would refuse to proceed with a joint venture if [p]laintiff

was identified as one of the partners."[1] At this point, they offered to buy out plaintiff's stake in the joint venture, which was independently valued at around $1.4-1.5 billion. However, according to plaintiff, defendants refused to pay him the value of his stake, and he refused defendants' initial offer, which was to pay him "cash equal to his share (7.5%) of the cash and stock BP had agreed to pay TNK's shareholders as part of the consideration to form the TNK-BP joint venture (equal roughly to $525 million), and provide a $100 million line of credit."

Ultimately, plaintiff says, rather than sell his stake in the joint venture outright, he agreed to conceal his ownership status in the joint venture and "forego his dividends, in exchange for payments reflecting his share of the BP 'additional consideration' to TNK's shareholders . . . and an additional amount in purported consideration for future dividends that [plaintiff] would otherwise have been entitled to receive from the joint venture." These terms were reflected in a draft "swap agreement" (the 2003 agreement), not between plaintiff and defendants but between their nominees, namely, defendants' affiliate, Rochester Resources Ltd., and plaintiff's nominee, Coral Petroleum Ltd. Under this 2003 agreement, Rochester Resources would issue a series of notes equaling $600 million to an escrow agent, and in exchange, Coral Petroleum would surrender the promissory note it had received pursuant to the 2001 agreement. Pursuant to the 2003 agreement, plaintiff remained silent about his ownership stake to avoid scuttling the BP deal.

In March 2013, a large Russian state-owned oil company—Rosneft—purchased the TNK-BP joint venture for a total of $55 billion in cash along with the transfer of 19.75% of Rosneft's stock to BP. As a result of the deal, defendants received payment of about $13.8 billion. Plaintiff expected to receive about $2 billion—i.e., 15% of defendants' proceeds from the Rosneft sale—but received nothing.

On October 13, 2014, plaintiff commenced this action, asserting causes of action for breach of contract, breach of joint venture, and breach of fiduciary duty with respect to the 2001 agreement or, in the alternative, fraud. He alleges that defendants breached the 2001 agreement, the parties' joint venture, and their fiduciary duty by retaining all proceeds from the Ros-

---

1. Specifically, defendants were concerned about negative press surrounding a criminal investigation into one of plaintiff's former business associates. Ultimately, plaintiff was cleared of any wrongdoing.

neft sale. He also alleges that defendants breached their fiduciary duties by coercing him to designate a nominee under the 2003 agreement, and by engaging in fraud. Plaintiff seeks to recover $2 billion, representing his percentage of the profits from the Rosneft sale.

In the portion of the order now challenged on appeal,[2] the motion court denied defendants' motion to dismiss plaintiff's causes of action for breach of their joint venture agreement and the 2001 agreement, and for breach of defendants' fiduciary duty. It held that although there was no written investment agreement signed by both defendants—since Blavatnik never signed the 2001 agreement—plaintiff sufficiently pleaded the existence of a valid oral agreement by alleging that the parties agreed to the central terms of the unsigned investment agreement. It further held that the oral agreement was not void under the statute of frauds because it was capable of being performed within one year, and because the statute of frauds is generally inapplicable to joint ventures. It also rejected defendants' argument that plaintiff's breach of contract and breach of joint venture claims were time-barred, reasoning that the claimed breach of the 2001 agreement was defendants' failure to pay plaintiff his percentage share of the 2013 Rosneft sale proceeds.

"On a motion to dismiss a cause of action pursuant to CPLR 3211 (a) (5) on the ground that it is barred by the statute of limitations, a defendant bears the initial burden of establishing, prima facie, that the time in which to sue has expired" (*Benn v Benn*, 82 AD3d 548, 548 [1st Dept 2011]). To meet its burden, "the defendant must establish, inter alia, when the plaintiff's cause of action accrued" (*Cottone v Selective Surfaces, Inc.*, 68 AD3d 1038, 1041 [2d Dept 2009]). The breach of contract and joint venture claims "accrue[ ] at the time of the breach," even in the event that the damages do not accrue until a later date (*Ely-Cruikshank Co. v Bank of Montreal*, 81 NY2d 399, 402 [1993]). A breach of fiduciary duty claim accrues where the fiduciary openly repudiates his or her obligation—i.e., once damages are sustained (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 140 [2009]). The statute of limitations on a breach of contract or joint venture cause of action is six years (*see* CPLR 213 [2]; *Eskenazi v Schapiro*, 27 AD3d 312, 315 [1st Dept 2006]). The statute of limita-

---

2. Plaintiff does not challenge the portion of the order dismissing plaintiff's fraud claim on the ground that it accrued in 2003.

tions on a breach of fiduciary duty claim is three years where (as here) money damages are sought (*see IDT Corp.*, 12 NY3d at 139; *see also* CPLR 213 [1]; 214 [4]; *Kaufman v Cohen*, 307 AD2d 113, 118 [1st Dept 2003]).

This action was commenced within both limitations periods, because defendants "had a recurring obligation to pay plaintiff his . . . share of the profits generated by" the joint venture (*Knobel v Shaw*, 90 AD3d 493, 494 [1st Dept 2011] [internal quotation marks omitted]; *see also Bulova Watch Co. v Celotex Corp.*, 46 NY2d 606, 611 [1979]). A new claim accrued when the obligation to do so was allegedly breached in 2013.

Defendants' reliance on *Welwart v Dataware Elecs. Corp.* (277 AD2d 372 [2d Dept 2000]) is misplaced. There, the basis of the plaintiff's claim was that the defendants had breached a 1981 agreement to issue to him shares of common stock in a closely-held corporation with which he was then employed; relatedly, he claimed a right to the dividends issued on those shares of stock that he said he had been promised. Thus, the right of the plaintiff in *Welwart* to claim payment of dividends was dependent on the issuance of shares of stock in his name, so it was the earlier failure to issue shares that constituted the accrual of the breach claim.

Here, in contrast, plaintiff's claimed rights to payment are not tied to or dependent on issuance of any physical document attesting to his investment in the venture; the damages as alleged are not, as defendants argue, the result of a failure to issue, in plaintiff's name, shares in the joint venture in 2001. His claimed right to payment from the proceeds of the 2013 sale is based on his investment and the resultant ownership interest, and that right to payment accrued at the time of the 2013 sale, not at the time plaintiff made his original investment.

Defendants remain free to attempt to establish that, as they claim, plaintiff does not possess the ownership interest or related rights he claims. But, the alleged investment agreement, and the ownership rights that it allegedly created, are not dependent as a matter of law on the issuance, or the failure to issue, a document establishing his ownership stake, as was the case in *Welwart*. The challenged claims relating to the sale to Rosneft accrued not in 2001, or 2003, but in 2013, and are therefore timely.

Accordingly, the order of the Supreme Court, New York County (Saliann Scarpulla, J.), entered December 2, 2015,

which, to the extent appealed from, denied defendants' motion to dismiss the first three causes of action in the amended complaint on statute of limitations grounds, should be affirmed, without costs.

FRIENDMAN, J.P., ANDRIAS, RICHTER and KAHN, JJ., concur.

Order, Supreme Court, New York County, entered December 2, 2015, affirmed, without costs.