| **Adeniji v City of New York** |
|:---:|
| 2024 NY Slip Op 34232(U) |
| November 26, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 152761/2022 |
| Judge: J. Machelle Sweeting |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. J. MACHELLE SWEETING**     PART         62

*Justice*

-------------------------------------------------------------------------------X

MARK ADENIJI,

                         Plaintiff,

              - v -

THE CITY OF NEW YORK, CAPTAIN JUAN DURAN,
INDIVIDUALLY, SERGEANT ROSTON MCCOY,
INDIVIDUALLY and LIEUTENANT WILDER LUCAS.

                        Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 152761/2022 |
| MOTION DATE | 01/27/2023 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 1, 13, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28

were read on this motion to/for                      DISMISSAL                    .

Plaintiff, a retired police officer, commenced this action against defendants The City of New York ("the City"), Captain Juan Duran ("Captain Duran"), Sergeant Roston McCoy ("Sergeant McCoy"), and Lieutenant Wilder Lucas ("Lt Lucas") (NYSCEF Doc. No. 18). Citing Executive Law § 296 and New York City Local Laws §§ 8-101 et seq, plaintiff seeks damages for allegedly being denied promotions, overtime, and other employment benefits due to his race and national origin and in retaliation for his complaints regarding the alleged discrimination. The original summons and complaint were filed on March 31, 2022 (NYSCEF Doc. No. 1).

Plaintiff previously discontinued this action against defendant McCoy, but the case remains active against the other defendants (NYSCEF Doc. No. 13). Defendants filed a pre-answer motion to dismiss the complaint based on both its partial untimeliness and its failure to state claims for racial discrimination, hostile work environment, and retaliation. Plaintiff opposes the motion and cross-moves to amend the complaint.

**152761/2022 ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL**
**Motion No. 002**

**Page 1 of 20**

Plaintiff's Cross-Motion

In reliance on *Peach Parking Corp. v 346 W. 40th St., LLC* (42 AD3d 82, 86 [1st Dept 2007]), plaintiff points out that courts freely grant motions to amend pleadings. Citing the Second Department's decision in *Lucido v Mancuso* (49 AD3d 220, 227 [2d Dept 2008]), plaintiff argues that a party moving to amend a pleading need not establish the legal sufficiency of the movant's allegations "unless the insufficiency or lack of merit is clear and free from doubt [internal quotation marks and citation omitted]." As the litigation is at an early stage, moreover, plaintiff states there is no prejudice. Accordingly, he argues that this court should grant his cross-motion.

Defendants' first objection to the amendment is that plaintiff did not redline and indicate on the proposed amended complaint, to show the proposed changes. (CPLR § 3025 [b]). Although defendants are correct in arguing that plaintiff should have redlined the proposed amended complaint or specifically described the proposed changes, this technical defect is not fatal in a case such as this one where, the amendments are "easily discerned on review of the proposed amended summons and complaint" (*Herrera v Highgate Hotels, L.P.*, 213 AD3d 455, 456 [1st Dept 2023]).

Additionally, defendants contend that this court should deny plaintiff's cross-motion to amend on the grounds that such amendments would be futile. However, "leave to amend the pleadings is to be freely granted, as long as there is no prejudice or surprise to the adversary" (*Juillet v City of New York*, 77 Misc 3d 1002, 1009 [Sup Ct, NY County 2022]). Here, defendants have not yet answered the complaint or conducted discovery, and they do not assert any claims of prejudice. Further, as the court concluded in *Juillet*, "plaintiff's proposed amended complaint is not futile as it incorporates additional facts not in the original complaint" (*id.* at 1010). Here, the additional facts do not add claims that should take defendants by surprise. Instead, the amended complaint clarifies the proper timeline for the purpose of the statute of limitations and provides

additional details such as the names of some of the officers who allegedly received better treatment due to their race (*see Lavrenyuk v Life Care Servs., Inc.*, 198 AD3d 569, 570 [1st Dept 2021]). Therefore, the court exercises its broad discretion and grants the cross-motion.

Amended Complaint

According to the amended complaint (NYSCEF Doc. No. 23),[1] plaintiff, who is of Nigerian descent, joined the city's police department ("NYPD") in January 2006. The complaint alleges that plaintiff speaks three African languages and used this skill when he performed undercover work for NYPD between July 2006 and 2010. From 2010 to 2014, he worked undercover in NYPD's counterterrorism unit. The complaint alleges that, despite his excellent work, plaintiff did not receive a promotion to detective, but instead went to work in the statistics analysis department once the counterterrorism unit was disbanded. According to the complaint, the white officers in the unit received preferential assignments and more opportunities for overtime than the minority officers, which resulted in a loss of between $60,000 and $96,000 per year (NYSCEF Doc. No. 23, ¶ 131). The discriminatory treatment allegedly worsened when nonparty Constantin Tsachas (Tsachas") became unit commander in 2015.

Tsachas removed plaintiff from the statistics analysis department and placed him on patrol. The complaint states that when he requested a transfer from his assignment in Utica in 2019, nonparty Captain Tracey Harlet ("Harlet") refused his request "because she could not 'sell' him because he was black" (*id.*, ¶ 90; *see id.*, ¶¶ 77-89 [showing that request occurred in 2019]). The complaint also asserts that plaintiff received worse assignments and performance evaluations due to his race (*see, e.g., id.*, ¶¶ 96, 101).

---

[1] Unless otherwise indicated, hereinafter, references to the complaint relate to the amended complaint.

**152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL**
 **Motion No.  002**

Page 3 of 20

[* 3]

The complaint alleges that COMPSTAT, the performance management system that compares crime statistics in New York City locations, placed pressure on Tsachas to improve the unit's arrest and summonses quotas, and in turn Tsachas pressured the officers to increase their numbers. The complaint states that plaintiff regularly complained about the imposition of the quotas, and that his supervisors retaliated against him by, among other things, assigning him to fixed posts more frequently than white colleagues who were junior to him (*id.*, ¶ 36), and that he received lower evaluations because of his fixed post assignments. The complaint alleges that charges were levied against plaintiff for his off-duty work, and that plaintiff's supervisor, Captain Duran, also retaliated against him by denying his application for off-duty work. As a third retaliatory action, frivolous charges were allegedly levied against him. Also, Lt Lucas allegedly retaliated when he changed plaintiff's assignment from midnights to a 4 x 12 tour, which in turn cost plaintiff a night differential and prevented him from seeing his children.[2]

Plaintiff claims that upon the advice of his therapist, he retired early from the NYPD, as the treatment he received at his job was harming his mental and physical health. The complaint asserts nine counts, or causes of action: (1) racial discrimination under SHRL § 296; (2) hostile work environment under SHRL § 296; (3) retaliation under SHRL § 296; (4) race discrimination under the New York City Administrative Code § 8-107 (CHRL § 8-107); (5) hostile work environment under CHRL § 8-107; (6) retaliation under CHRL § 8-107; (8) strict liability against defendants under the SHRL; and (9) strict liability against defendants under the CHRL.

---

[2] In the complaint, plaintiff asserts that he did not work on Fridays because of his Sabbath and, as a result, he never had a steady partner. He also contends that he was harassed because he had a beard, which he wore for medical reasons, and that he was disciplined for having a beard, despite its medical necessity. Notwithstanding these allegations, the complaint does not assert claims for religious discrimination or failure to accommodate due to a disability.

**152761/2022  ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL**                    **Page 4 of 20**
  **Motion No.  002**

4 of 20

[* 4]

## CONCLUSIONS OF LAW

I.      Standard of Review

On a motion to dismiss under CPLR 3211, courts "must liberally construe the pleading and accept the facts as alleged . . . as true, accord [the nonmoving party] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc.*, 37 NY3d 169, 175 [2021] [*Himmelstein*] [internal quotation marks and citation omitted]). It is the defendants' burden to "establish[] that the complaint fails to state a viable cause of action" (*Simmons v Village Plumbing & Heating NY Inc.*, 81 Misc 3d 876, 878 [Sup Ct, NY County 2023] [internal quotation marks and citation omitted]). Dismissal is only warranted if the claim does not include the required factual allegations "or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (*Himmelstein*, 37 NY3d at 175 [internal quotation marks and citation omitted]). Further, the plaintiff does not have to allege specific facts but merely must give the defendants fair notice of the claims.

In the context of a motion to dismiss a discrimination claim, a defendant bears the burden of showing "one or more nondiscriminatory motivations for its actions" (*Cadet-Legros v New York Univ. Hosp. Ctr.*, 135 AD3d 196, 200 [1st Dept 2015] [internal quotation marks and citation omitted]). The CHRL is broader than the SHRL, but its broader scope "do[es] not connote an intention that the law operate as a general civility code" (*Williams v New York City Hous. Auth.*, 61 AD3d 62, 79 [1st Dept 2009] [internal quotation marks and citation omitted]) such that petty slights or inconveniences are actionable (*id.* at 79-80).

152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL       Page 5 of 20
Motion No.  002

5 of 20

[* 5]

## II.    Defendants' Motion

### a. *Statute of Limitations*

Defendants allege that plaintiff's complaint , which was filed on March 31, 2022, is partially untimely under the three-year statute of limitations that governs both the SHRL and the CHRL. They allege that all misconduct prior to March 31, 2019, is untimely. Specifically, they allege that paragraphs 17, 21-22, 25, 28-32, 34, 47-50, and 54 show that the following claims are time barred:

> "(1) white officers purportedly received preferential assignments including overtime; (2) NYPD placed Plaintiff on regular patrol; (3) Plaintiff received pressure to meet an arrest quota; (4) Plaintiff received greater fixed post assignments than white officers; (5) Plaintiff received lower evaluations than other white employees (6) Plaintiff received fewer patrol assignments than white officers; (7) other "lower performing white officers" received discretionary promotions; (8) "others" harassed Plaintiff for maintaining a beard; (9) Plaintiff lacked a steady partner; (10) Plaintiff occasionally worked individually; and (11) Captain Duran ignored Plaintiff's request for off-duty employment" (NYSCEF Doc. No. 19 [Defendants' Mem of Law], * 9).

In his memorandum of law in opposition and in support of his cross-motion to amend, plaintiff concedes that all claims that accrued before August 18, 2018, are untimely (*see* NYSCEF Doc. No. 22, *14). Indeed, the amended complaint has added that "Plaintiff is only bringing claims related to events that occurred after August 18, 2018" (NYSCEF Doc. No. 23, ¶ 6).  The remainder of the allegations, he states, are in the complaint as background information to provide context to his claims (*see id.*, ¶ 7).  Notably, plaintiff uses August 18, 2018, rather than March 31, 2019, as the cutoff date.  In support, he points to *Chavez v Occidental Chem. Corp.* (35 NY3d 492, 505 n 8 [2020]), which described the general impact of a toll, and *Brash v Richards* (195 AD3d 582 [2d Dept 2021]), which applied the 228-day Covid toll to the deadline for filing an appeal.

In reply, defendants implicitly concede that the tolling period is applicable.  However, they argue that some of plaintiff's allegations against them should be dismissed. Specifically, they note that the contentions related to plaintiff's reassignment to Transit District 32 in 2014 are time-

**152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL**                    **Page 6 of 20**
**Motion No.  002**

[* 6]

barred. They also contend that plaintiff does not discuss any incidents that occurred after November 18, 2018, and they assert that the continuing violation doctrine is inapplicable because plaintiff merely complains about discrete acts.

Based on the above, there appears to be little controversy remaining. Defendants have shown, "*prima facie*, that the time in which to sue has expired" for some aspects of the causes of action (*Lebedev v Blavatnik*, 144 AD3d 24, 28 [1st Dept 2016] [internal quotation marks and citation omitted]). In his opposition, plaintiff concedes this fact, adding only that defendants overlooked the Covid-19 tolling period. Further, plaintiff states that the complaint includes incidents before the critical time-period for context and background, which is permissible (*see Jeudy*, 142 AD3d at 823). His amended complaint underscores this fact (NYSCEF Doc. No. 23, ¶¶ 4-7). Defendants' assertion that plaintiff has not detailed any incidents after November 18, 2018, is incorrect; there are numerous references to events that occurred at some point in 2019 and some discussion of events that occurred in 2020 (*see, e.g.*, NYSCEF Doc. No. 18, ¶¶ 44, 52, 92-105, 127-131, 140 [all discussing allegedly discriminatory and retaliatory actions that allegedly took place on unspecified dates in 2019]; ¶¶ 141-144 [discussing allegedly discriminatory and retaliatory actions that allegedly occurred in 2020]). Accordingly, this prong of the motion is denied as moot, as it is conceded that all events prior to August 18, 2018, are merely in the amended complaint for background information and context and are not the bases for plaintiff's claims.[3]

---

[3] As defendants note, the continuing violation doctrine is inapplicable here, and plaintiff has not argued to the contrary (*see Lum v Consolidated Edison Co. of N.Y., Inc.*, 209 AD3d 434, 435 [1st Dept 2022]).

**152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL**
**Motion No.  002**

Page 7 of 20

### b. Failure to State Claims

With regard to a motion made pursuant to CPLR § 3211 (a) (7), the court does not make credibility determinations or assess the strength of a particular cause of action. Instead, it applies "notice pleading standards," and determines whether the allegations give "fair notice" of the nature of the causes of action and their bases (*Vig v New York Hairspray Co., L.P.*, 67 AD3d 140, 145 [1st Dept 2009]; *see Walker v Triborough Bridge & Tunnel Auth.*, 220 AD3d 554, 554 [1st Dept 2023]). Under these liberal standards, courts consider whether the complaint states a cause of action rather than whether the claim is meritorious (*see Kurylov v Icahn Sch. Of Medicine at Mount Sinai*, 139 AD3d 451, 451-452 [1st Dept 2016]). "Whether the complaint will later survive a motion for summary judgment, or whether the plaintiff will ultimately be able to prove its claims, of course, plays no part in the determination of a prediscovery CPLR 3211 motion to dismiss" (*Pergament v Government Empls. Ins. Co. ["GEICO"]*, 225 AD3D 799, 800 [2d Dept 2024] [internal quotation marks and citation omitted]).

### *Racial Discrimination*

Next, defendants argue that plaintiff has not alleged a viable claim of race discrimination. Citing *Harrington v City of New York* (157 AD3d 582, 584 [1st Dept 2018]), they note that a viable claim under both the SHRL and the CHRL requires a showing (1) that the plaintiff is part of a protected class, (2) that the plaintiff was qualified for the position in question, (3) that an adverse employment action occurred under the SHRL or the plaintiff was treated differently from other employees under the CHRL, and (4) that the adverse treatment "[gives] rise to an inference of discrimination." Defendants do not contest that plaintiff is part of a protected class or that he was qualified for the job. However, they argue that, notwithstanding the broader scope of the CHRL,

152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL          Page 8 of 20
  Motion No. 002

8 of 20

under both the State and City law, plaintiff must establish that the lesser treatment was the result of his protected status.

First, they contend that, even accepting the allegations in the complaint as true, the complaint does not assert an adverse employment action. Quoting *Lent v The City of New York* (2021 NY Slip Op 31805 [U], \*4 [Sup Ct, NY County 2021], *affd* 209 AD3d 494 [1st Dept 2022]), they state that "being assigned to a work location that is less desirable or more inconveniently located than others is not by itself an adverse employment action." They point out that in *Pelepelin v City of New York* (189 AD3d 450, 452 [1st Dept 2020]), the First Department rejected a claim that the plaintiff's reassignment to guard duty at the same pay rate, without more, was not an adverse employment action within the meaning of the SHRL.[4]  In addition, they contend that plaintiff's negative evaluations, without more, do not comprise adverse actions.

Second, defendants point out that the disciplinary charges against plaintiff were brought for reasons other than race discrimination.  More specifically, they recount that, according to the complaint, plaintiff was disciplined for reasons including his beard, his "lack of activity," his discourteous behavior, and his operation of a commercial vehicle  (NYSCEF Doc. No. 19, \*11-12 [citing NYSCEF Doc. No. 18, ¶¶ 58 (regarding beard and lack of activity), 66-67 (regarding operation of vehicle), 94 (regarding discourteous behavior)]).  Additionally, defendants allege that plaintiff has not shown that he suffered an adverse employment change after these disciplines. Defendants contend that plaintiff's allegation that he was treated disadvantageously compared to white officers is conclusory and insufficient to withstand CPLR § 3211 review because the complaint does not provide sufficient information about the white officers. According to defendants, the complaint also does not allege discriminatory animus.

---

[4] The First Department did conclude, however, that the plaintiff pled a valid claim under the CHRL.

**152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL**          **Page 9 of 20**
  **Motion No.  002**

9 of 20

In opposition, plaintiff refers to the liberal standards that courts apply when they consider a CPLR § 3211 (a) (7) motion to dismiss. Considering this broad standard, plaintiff asserts that his amended complaint adequately pleads race discrimination. Citing cases including *Forrest v Jewish Guild for the Blind* (3 NY3d 295, 305 [2004] [evaluating summary judgment motion]), he reiterates the four elements of a racial discrimination claim. Further, citing *Romanello v Intesa Sanpaolo, S.p.A.* (22 NY3d 881, 885-885 [2013]), he points out the liberal standards for CHRL claims. Citing *Garrigan v Ruby Tuesday, Inc.* (2014 WL 2134613, *3, 2014 US Dist LEXIS 70467, *8 [SD NY May 22, 2014]), he asserts that there is no need to establish a causal connection between the alleged discrimination and a specific adverse employment action for the purposes of the CHRL. Instead, he argues that he need only show that he was not treated as well as others who were not in the protected class.

Countering defendants' allegation that no adverse employment action occurred – or, for the purposes of the CHRL, that the plaintiff was treated no differently from employees who were not part of the protected class – plaintiff refers to several adverse actions that occurred after August 18, 2018. Specifically, he points out that the complaint alleges that he was assigned to positions that did not afford him opportunities for overtime and for higher COMPSTAT numbers, and that he received at least one negative evaluation during the period in question which impacted his opportunity for promotions and advancement. Plaintiff cites to *Juillet*, in which the court found that, for a CPLR 3211 motion to dismiss, the plaintiff's claims of "missed overtime pay and a denial of promotion to detective and transfers to specialized units . . . sufficiently plead[ed] the adverse employment element" (*Juillet*, 77 Misc 3d at 1007). Plaintiff notes that in *Emengo v State of New York* (143 AD3d 508, 508-509 [1st Dept 2016]), the First Department reversed the portion

152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL        Page 10 of 20
   Motion No.  002

of the trial court order that dismissed the plaintiff's claim of racial discrimination because the complaint alleged that he was denied the opportunity for promotions.

In addition, plaintiff alleges that the amended complaint adequately alleges that the adverse actions were the result of both his race and his national origin, thus providing the requisite discriminatory animus. More specifically, he points to paragraphs 87-99 and 129-131 of his amended complaint (NYSCEF Doc. No. 23). The former section includes the allegations that plaintiff was denied a transfer because his captain could not "sell" him because of his race and that comments about his appearance in his performance review were pretextual language for discrimination (*id.*, ¶¶ 90, 93). In addition, it alleges that he and other minority officers receive worse assignments and more negative evaluations than similarly situated white officers (*id.*, ¶¶ 96-99). The latter paragraphs allege financial loss due to discriminatory overtime assignments.

Under the SHRL, a complaint must allege that the plaintiff is part of a protected class, that the plaintiff was qualified for the position in question, that there was an adverse employment action, and that "the adverse action occurred under circumstances giving rise to an inference of discrimination" (*Acala v Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.*, 222 AD3d 706, 707 [2d Dept 2023] [internal quotation marks and citation omitted]). "An inference of discrimination [under the SHRL] is a flexible standard that can be satisfied differently in differing factual scenarios" (*Roper v City of New York*, 81 Misc 3d 1208 [A], 2023 NY Slip Op 51299 [U], *3 [Sup Ct, Kings County 2023] [internal quotation marks and citations omitted]). Further, "[a] showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case" (*Thompson v City of New York*, 2024 NY Slip Op 50701 [U], *4-5 [Sup Ct, Kings County 2024] [internal quotation

152761/2022 ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL
Motion No. 002

Page 11 of 20

11 of 20

marks and citation omitted]).  Under the City law, the complaint must merely allege that there was an unfavorable employment change or that the plaintiff was treated less well than other employees due to a protected characteristic such as race (*id.*).  "Courts must construe the [State and City] Human Rights Laws broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (*Syeed v Bloomberg L.P.*, 41 NY3d 446, 451 [2024] [internal quotation marks and citation omitted]).

Applying these standards, the court denies the motion to the extent that the complaint alleges that plaintiff was treated differently, and negatively, due to his race. For the reasons plaintiff contends, paragraphs 87-99 of the amended complaint – more precisely, paragraphs 90, 93, and 96-97 – sufficiently state a claim for racial discrimination. Defendants' challenges to this portion of plaintiff's discrimination claim primarily relate to the strength and veracity of plaintiff's contentions, and these are not appropriate in the context of a CPLR § 3211 (a) (7) motion. The contention that he was written up and therefore passed over for promotions state a claim for disadvantageous treatment (*see Demir v Sandoz Inc.*, 155 AD3d 464, 466 [1st Dept 2017] [under SHRL]; *James v City of New York*, 144 AD3d 466, 467 [1st Dept 2016] [under CHRL]). In *Reyes v The City of New York* (2019 NY Slip Op 30441 [U], *13 [Sup Ct, NY County 2019]), the plaintiff's claim that the poor reviews he received resulted in the loss of job benefits including seniority privileges and a night-shift differential sufficiently allege an adverse employment action under the SHRL. The contention that defendants did not promote plaintiff or give him overtime opportunities but afforded these benefits to other, less qualified white officers sufficiently states a claim for discriminatory conduct (*see Matter of Local 621 v New York City Dept. of Transp.*, 178 AD3d 78, 81 [1st Dept 2019]; *Rodrigues v Watershed Ventures LLC*, 2018 NY Slip Op 30322 [U], *5 [Sup Ct, NY County 2018]). Defendants' contention that there were nondiscriminatory reasons

152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL
Motion No.  002

Page 12 of 20

[* 12]

for all actions they took create issues of fact appropriate for consideration in the context of a summary judgment motion, but these arguments are premature here (compare *Cubelo v City of New York*, 168 AD3d 637, 637 [1st Dept 2019] [granting summary judgment where defendants established their position through the record]).

With regard to plaintiff's claim that he was discriminated against because of his national origin, the complaint fails to set forth facts sufficient to support this contention. The complaint states that plaintiff is of Nigerian descent. Without more, this statement is too conclusory to support this claim (compare with *Emengo*, 143 AD3d at 509 [national origin claim existed where plaintiff alleged that his superior stated that, because plaintiff was an immigrant, he would never be promoted]).

*Hostile Work Environment.*

Defendants state that the complaint does not set forth a viable hostile work environment claim. They contend that the pleading discusses only a few instances of purported hostility, including that plaintiff was called a "boss fighter" and told that he would be "psyched out of the department" (NYSCEF Doc. No. 19 [citing NYSCEF Doc. No. 18. ¶¶ 79 (regarding Captain Harlet's alleged statement that she could not "sell" plaintiff because he was Black), 84 (regarding claim that he was called a "boss fighter"), 96 (regarding alleged threats that he would be "psyched out" of the department)]). As in *Pelepelin*, defendants argue that, except for Captain Harlet's alleged comment, the additional comments do not demonstrate any an anti-Black or anti-Nigerian bias (189 AD3d at 451-452 [dismissing hostile work environment claim because comments did not raise an inference of discriminatory animus]). Further, relying on *Chong v City of New York* (2020 NY Slip Op 31827 [U], *5 [Sup Ct, NY County 2020]), defendants argue that, even if

152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL
Motion No. 002

Page 13 of 20

Captain Harlet made the statement in question, a single comment, even if reprehensible, does not create a pervasively hostile atmosphere. In addition, defendants point out that paragraph 95 of the amended complaint (NYSCEF Doc. No. 23) states that plaintiff was called "a 'boss fighter' because he spoke out about the quota."

Plaintiff opposes this prong of the motion, arguing that he has pled a viable claim. He states that, at minimum, he has alleged a borderline case, with allegations that are not clearly pervasive and severe or petty and trivial. Accordingly, he states that a triable issue of fact exists, precluding dismissal. He points to *Alshami v City Univ. of N.Y.* (203 AD3d 592, 592-593 [1st Dept 2022]), in which the First Department found that the plaintiff's allegations about a "coworker's multiple derogatory remarks about [his national origin], sometimes made in the presence of plaintiff's supervisors, along with the allegedly unfounded write-ups, unfavorable assignments, and denial of a promotion, were sufficiently severe and pervasive to support" a hostile work environment claim. He also points to *Anderson v Edmiston & Co., Inc.* (131 AD3d 416, 417 [1st Dept 2015]). Here, he states, the fact that he worked in an atmosphere in which white employees were treated better than minorities is sufficient to allege a viable claim of severe and pervasive hostility.

In reply, defendants state that *Alshami* and *Kwong v City of New York* (204 AD3d 442 [1st Dept 2022]), upon which plaintiff relies, are both distinguishable because the hostile work environment claims were based on multiple derogatory comments by the defendants. Additionally, they reiterate their position that most of the comments are not connected to plaintiff's race or national origin and that Captain Harlet's comment, by itself, does not support plaintiff's cause of action. They rely on *Model Serv., LLC v MC2 Models Mgmt., LLC* (2015 NY Slip Op 32454 [U], *3 [Sup Ct, NY County 2015]) in support of their position that plaintiff's latest

[* 14]

allegation – that plaintiff worked in an atmosphere in which he was treated worse than his white counterparts – is too conclusory to survive their motion to dismiss.

To allege a viable claim for hostile work environment under the SHRL, the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the plaintiff's working conditions and create an abusive working environment" (*Ruiz v Armstrong*, 2024 NY Slip Op 24054, *7-8 [Sup Ct, Kings County 2024] [internal quotation marks and citation omitted]). Further, plaintiff must allege that a reasonable employee would find that the harassment negatively impacted the conditions of employment (*id.*, *8). Here, this court finds that, taken together, the comments directed toward plaintiff are sufficient to support his claim of a hostile work environment under State law.

Similarly, under the more liberal standard that governs the CHRL and in consideration of the preliminary stage of the litigation, this court also finds that plaintiff has alleged facts sufficient to support a hostile work environment claim under City law. *See Campbell v New York City Dept. of Educ.*, 200 AD3d 488, 489 [1st Dept 2021] (finding that plaintiff stated a viable claim under the more liberal City law because she alleged that there had been a few comments about her race, that she had received several write-ups, and that she had been transferred from her unit). More specifically, the court concluded that, collectively, the allegations "could support plaintiff's allegation that she was treated 'less well,' at least in part due to discriminatory reasons" (*id.*). Here, too, plaintiff's complaint alleges a history of alleged maltreatment and denied opportunities.

*Retaliation*

To state a claim for retaliation, the complaint must allege that (1) plaintiff engaged in protected activity, (2) the defendant[s] are aware that the plaintiff participated in the protected activity, (3) the plaintiff suffered adverse action based upon the activity, and (4) there is a causal connection between the protected activity and the adverse action" (*Matter of Clifton Park Apts., LLC v New York State Div. of Human Rights*, 41 NY3d 326, 331 [2024] [internal quotation marks and citation omitted]).

Defendants argue that the retaliation causes of action must be dismissed because the complaint does not allege that plaintiff complained about a protected activity or about racial discrimination (*Faraci v New York State Office of Mental Health* (2013 NY Slip Op 32613 [U], *9 [Sup Ct, NY County 2013]). They note that, in *Harrington*, the First Department stated that a *prima facie* case exists under the SHRL only when the complaint alleges that the retaliation is in response to the plaintiff's involvement in a protected activity (157 AD3d at 585). Under the more liberal standard of the CHRL, instead of showing an adverse action, the complaint must allege that the defendants' action or actions "disadvantaged" the plaintiff (*id.*). According to defendants, plaintiff's claims fail under both laws because the complaint does not show that defendants engaged in any retaliatory action based on race.

Citing *Pezhman v City of New York* (47 AD3d 493, 494 [1st Dept 2008]), defendants state that plaintiff's complaints about the COMPSTAT system were about "conduct other than unlawful discrimination" and are "not protected activity subject to a retaliation claim under the State and City Human Rights Laws." To the extent that plaintiff claims the retaliation was in response to his medical and religious accommodations, defendants note that plaintiff received accommodations for his beard and for the Sabbath. In addition, defendants rely on *D'Amico v City*

152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL
Motion No. 002

Page 16 of 20

[* 16]

*of New York* (159 AD3d 558, 558-559 [1st Dept 2018]) for the proposition that even the rejection of a request for a reasonable accommodation does not form the basis of a retaliation claim, and it adds that, regardless, plaintiff does not show a nexus between defendants' acts and the alleged harassment. As for his lower evaluations, defendants cite *Faraci v New York State Office of Mental Health* (2013 NY Slip Op 32613 [U], *9 [Sup Ct, NY County 2013]), which holds that where negative employment evaluations do not have tangible consequences, they cannot be considered "adverse employment actions." Similarly, defendants declare that the investigation into plaintiff's off-duty employment and the comment by an unnamed person that plaintiff might be psyched out of the department cannot be construed as retaliatory.

In opposition, plaintiff asserts that in the context of the liberal standards applied under the CHRL, he has pled a valid retaliation claim. Contrary to defendants' contentions, plaintiff argues that a request for an accommodation is a protected activity under the CHRL. Although he was granted the accommodation, plaintiff claims that the alleged harassment he received and the lack of a partner were retaliatory. Plaintiff argues that Captain Duran complained about his beard even though plaintiff had a medical accommodation; that he received six command disciplines the following day because of "his beard and lack of activity" (NYSCEF Doc. No. 23, ¶ 67) and he received a negative interim evaluation for the same reason. Plaintiff also contends that investigations into his off-duty work for which he was not approved and his personal use of a commercial vehicle were also in retaliation for his beard and lack of activity.

In reply, defendants argue that plaintiff merely describes the standard for a retaliation claim and that, as in *Akinde v New York City Health & Hosps. Corp.* (169 AD3d 611, 612 [1st Dept 2019]), plaintiff sets forth no facts showing a nexus between the alleged protected activities and the alleged retaliatory conduct. Specifically, defendants argue that plaintiff does not indicate when

152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL                Page 17 of 20
  Motion No.  002

17 of 20

he requested the accommodation and, therefore, it is impossible to show a connection between the accommodation and any alleged retaliatory treatment. They argue that the allegation that he was harassed because of his beard is conclusory.

"Plaintiffs in retaliation cases are held to a lenient notice pleading standard and are generally afforded deference at the pleading stage" (*Herskowitz v State of New York*, 222 AD3d 587, 588 [1st Dept 2023]).  However, the plaintiff must sufficiently plead that the defendants engaged in adverse actions and that a causal connection exists between the alleged protected activity and the alleged retaliation (*id.*).  Here, defendants granted plaintiff the accommodation in question – that is, they granted him an exemption so that he did not have to shave his beard. Even under the more liberal standards of the CHRL, plaintiff fails to show a connection between the fact that he had a beard and any retaliatory action; that there is a "temporal proximity between plaintiff's [accommodation] and defendants' adverse actions" (*id.* at *9 [finding temporal proximity]); or that defendants gave him less favorable assignments because he had a beard. Further, any contention that plaintiff was retaliated against because he complained about the COMPSTAT requirements also fails, as this is not a protected activity (*see Brunache v MV Transp., Inc.*, 151 AD3d 1011, 1014 [2d Dept 2017] [dismissing plaintiff's retaliation claim because complaint did not relate to a "statutorily prohibited discrimination"]).

### *Constructive Discharge*

Defendants challenge plaintiff's claim that the hostile work environment was so extreme that he was constructively discharged. They stress that in cases such as *Morris v Scroder Capital Mgt. Intl.* (7 NY3d 616, 621-622 [2006]), defendants must deliberately and intentionally make the plaintiff's "working conditions so intolerable that the employee is forced into an involuntary

**152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL**                    **Page 18 of 20**
  **Motion No.  002**

18 of 20

[* 18]

resignation" (internal quotation marks and citation omitted). In assessing such a cause of action, the court must consider whether "a reasonable person in the employee's shoes would have felt compelled to resign" (*id.* [internal quotations and citation omitted]). They note that other than plaintiff's contention that his therapist encouraged him to resign because of the stress of his job, there is no amplification of the claim that plaintiff was constructively discharged.

In light of this court's above determination that plaintiff has pled a viable claim of a hostile work environment claim, this court also finds that plaintiff has set forth a valid claim of constructive termination.

For all of the reasons set forth herein, it is hereby

**ORDERED** that plaintiff's cross-motion for leave to amend the complaint is granted, and the amended complaint filed under NYSCEF Doc. No. 23 is accepted; and it is further

**ORDERED** that the branch of defendants' motion seeking dismissal of plaintiff's claims alleging race discrimination under the City Human Rights Law is denied; and it is further

**ORDERED** that the branch of defendants' motion seeking dismissal of plaintiff's claims alleging a hostile work environment under the City Human Rights law is denied;  and it is further

**ORDERED** that the branch of defendants' motion seeking dismissal of plaintiff's claims alleging a hostile work environment under the State Human Rights Law is denied; and it is further

**ORDERED** that the branch of defendants' motion seeking dismissal of plaintiff's claims alleging discrimination based on national origin under both the City and State Human Rights Law is granted; and it is further

**ORDERED** that  the branch of defendants' motion seeking dismissal of plaintiff's claims under the State Human Rights Law for retaliation is granted; and it is further

152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL                    Page 19 of 20
  Motion No.  002

19 of 20

**ORDERED** that, for the purpose of clarity, plaintiff shall file a "second amended complaint" that comports with this order within 30 days of entry; and it is further

**ORDERED** that defendants shall file their answer within 30 days of the date of filing.

| November 26, 2024 | | | | |
|---|---|---|---|---|
| **DATE** | | | **J. MACHELLE SWEETING, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | **X** | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | GRANTED | DENIED | | GRANTED IN PART | **X** OTHER |
| APPLICATION: | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

152761/2022   ADENIJI, MARK vs. THE CITY OF NEW YORK ET AL
Page 20 of 20
Motion No.  002

20 of 20