◼ LOUIS A. RUSSO, as Executor of RONALD E. PECUNIES, Deceased, Respondent-Appellant, v DAVID ROZENHOLC et al., Appellants-Respondents, et al., Defendant. [13 NYS3d 391]—

Order, Supreme Court, New York County (Joan A. Madden, J.), entered October 22, 2013, which denied defendants-appellants' motions to dismiss the complaint as against them, and denied plaintiff's cross motion for partial summary judgment on his cause of action for breach of contract, unanimously affirmed, without costs.

In May 2006, the nonparty building owner filed an application with the Department of Housing and Community Renewal (DHCR) seeking to demolish the building located at 220 Central Park South in Manhattan and evict the tenants. As a result, a

group of rent-stabilized tenants formed a tenants' association to rebuff the building owner's efforts. One of those tenants was plaintiff's decedent Ronald E. Pecunies (the decedent), who lived with his girlfriend Emel Dilek in apartment 16AB—a large unit created by converting two apartments into one.

The tenants retained defendants David Rozenholc and David Rozenholc and Associates (collectively, DR&A) to represent them in the DHCR proceeding and to negotiate with the building owner. In the retainer agreement, dated April 3, 2009, the tenants represented and warranted that they had "agreed to share equally in any settlement offer made by [the owner]." The retainer agreement also stated that each apartment represented a single share, but specifically stated, "it is further agreed that [decedent], who occupies combined apartment 16 AB[,] will receive two (2) shares and agrees to pay two (2) shares of any legal fees owed."

In April 2009, DHCR issued an order permitting the building owner to evict the tenants. In February 2010, after unsuccessfully challenging the order, DR&A commenced a CPLR article 78 proceeding on behalf of the tenants, including decedent. However, decedent died on May 22, 2010, after the commencement of the article 78 proceeding but before any settlement could be reached with the building owner. On September 24, 2010, counsel for decedent's estate wrote to DR&A, authorizing it to continue to represent the estate's interest. According to the estate's counsel, this authority came from plaintiff, who was the executor of decedent's estate.

A dispute later apparently arose between plaintiff and Dilek as to Dilek's rights with respect to the apartment. Plaintiff and Dilek each had counsel, both of whom remained in communication with DR&A. According to attorney Rozenholc, the building owner refused to offer any money to either Dilek or to the estate, taking the position that no one had any succession rights to the apartment under the Rent Stabilization Code.

The tenants and the building owner ultimately settled the article 78 proceeding for more than $33 million. At approximately the same time, plaintiff, Dilek, and the building owner, entered into an agreement, dated December 2, 2010 (the Dilek buyout agreement), in which the plaintiff recited that as executor of the estate, he had no claim to apartment 16AB after decedent died on May 22, 2010. Plaintiff also recited that Dilek had occupied apartment 16AB before decedent's death "and succeeded to his tenancy." The signatories to the Dilek buyout agreement agreed that in exchange for Dilek's vacating apartment 16AB, the building owner would pay her a

single share's worth of the $33 million settlement—namely, $1,562,500 ($1,700,000 less $187,500 in counsel fees). The Dilek buyout agreement further stated that DR&A represented plaintiff and Dilek in connection with that agreement.

In February 2012, plaintiff, on behalf of decedent's estate, commenced this action against the DR&A defendants and the defendants-tenants,* asserting two causes of action—namely, legal malpractice (against the DR&A defendants) and breach of contract (against the DR&A defendants and the defendants-tenants).

As to the legal malpractice claim, the complaint alleged that DR&A breached its duty to the estate when it failed to inform the estate that there was a retainer agreement and that the retainer agreement contained an express agreement among the tenants to "share equally" in any settlement proceeds. Likewise, the complaint alleged that DR&A breached its duty to the estate by failing to inform it that the retainer agreement explicitly recognized decedent's right to receive the two shares of the settlement proceeds based on his occupancy of two apartments. Thus, plaintiff concluded, DR&A committed legal malpractice when it failed to advise plaintiff of the estate's rights under the retainer and instead advised plaintiff to sign the settlement documents, thus forfeiting its right to settlement proceeds.

As to the breach of contract claim, the complaint alleged that the two settlement shares owed to decedent had wrongly been distributed to defendants-tenants, and that all defendants breached the retainer agreement by failing to pay the estate the value of those shares.

In May 2012, DR&A moved under CPLR 3211 (a) (7) to dismiss the complaint. On the motion, DR&A stated that plaintiff had actually suffered no damages because in fact, estates cannot succeed to rent-stabilized tenancies. Thus, DR&A concluded, because the estate was never entitled to a portion of the settlement, plaintiff had no legal right to decedent's apartment under the Rent Stabilization Code. DR&A also argued that plaintiff's relinquishment of any rights to the apartment had nothing to do with any malfeasance by DR&A or attorney Rozenholc, but resulted solely from the fact that plaintiff recognized that, in fact, he had no legal basis to assert any claim under the Rent Stabilization Code.

In July 2012, defendants-tenants cross-moved under CPLR

---

* Defendants-tenants consist of all defendants other than David Rozenholc and David Rozenholc & Associates.

3211 (a) (7) to dismiss the breach of contract cause of action as against them. In their cross motion, defendant-tenants argued that the estate relinquished all rights to decedent's leasehold because none of decedent's family members had statutory succession rights under the Rent Stabilization Code. Similarly, defendants-tenants argued that decedent's death extinguished his buyout rights as a matter of law.

Plaintiff then cross-moved in August 2012 for partial summary judgment under CPLR 3212 on its second cause of action for breach of contract. On the cross motion, plaintiff argued that DR&A breached the retainer agreement by failing to collect and distribute the settlement proceeds in accordance with the agreement's terms. Likewise, plaintiff asserted that defendants-tenants breached the agreement when they failed to "pool" the settlement and pay two shares to decedent. Plaintiff also argued that defendants-tenants were unjustly enriched by receiving amounts exceeding their rightful shares.

In an affidavit in opposition to defendants' motions and in support of plaintiff's cross motion, plaintiff stated that had attorney Rozenholc "informed [plaintiff] of the Retainer Agreement's terms, or provided [plaintiff] with a copy in advance of the settlement, [plaintiff] would not have agreed to any settlement which resulted in no money to the [e]state." Plaintiff further stated that although the estate forfeited its rights to the apartment under the Rent Stabilization Code, it "did not knowingly or intentionally forfeit its rights to two shares of the settlement under the Retainer Agreement." Plaintiff also specifically stated that "but for" attorney Rozenholc's failure to properly advise the estate of its rights under the retainer, plaintiff "would not have consented to the settlement in its final form but rather would have insisted on payment of the two shares from the total proceeds."

As to the breach of contract claim, the IAS court properly denied the motion to dismiss that claim. Of course, on a motion to dismiss under CPLR 3211 (a) (7), a court must determine whether the factual allegations taken as a whole manifest any cause of action cognizable at law (see Ackerman v 305 E. 40th Owners Corp., 189 AD2d 665, 666 [1st Dept 1993]).

Despite defendants-tenant's arguments otherwise, the breach of contract cause of action is not defeated by the provisions of the Rent Stabilization Code. On the contrary, the breach of contract action against defendants-tenants rests upon plaintiff's allegation that by the retainer agreement's express terms, the tenants, including decedent, agreed to "pool" the money they received from the building owner—that is, to share equally

in any settlement—and then pay to decedent two shares of the pooled money. Plaintiff asserts that to the extent the defendants-tenants failed to pay decedent his two shares under the retainer agreement, they are in breach of the retainer agreement, or have been unjustly enriched.

These allegations are directed specifically to defendants-tenants' actions with respect to the money they actually received in the settlement with the building owner; this issue is separate from a tenant's rights of succession under the Rent Stabilization Code. Whether or not the decedent had succession rights is not relevant to the allegations of the complaint at this stage of the litigation; the tenants had already received settlement money and, according to the complaint, had agreed to share it equally. Given the allegations in the complaint—namely, that defendants-tenants, contrary to their express agreement, did not share equally in the money they received in settlement, and were unjustly enriched—plaintiff has sufficiently stated a claim for breach of contract.

Likewise, there is no merit to DR&A's argument on appeal that for the purposes of the breach of contract claim, the estate was not a signatory to the retainer agreement and therefore cannot assert decedent's rights under that agreement. Nor is there any merit to DR&A's argument on appeal that the estate lacks standing to assert a malpractice claim against it. On the contrary, the estate stepped into decedent's shoes and indeed, specifically authorized DR&A to represent the estate's interests under the retainer agreement (see generally Estate of Schneider v Finmann, 15 NY3d 306 [2010]).

DR&A makes a similarly unavailing argument that the estate's waiver of rights to decedent's apartment operates as a binding judicial admission and a complete bar to the action. A party asserting a waiver of rights has the burden of establishing that the purported waiver constituted an intentional, voluntary relinquishment of a known right (see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442, 446 [1984]; White v Church of Our Lady of Sorrows, 255 AD2d 109 [1st Dept 1998]). Here, plaintiff alleges that DR&A never informed it of the retainer agreement's existence and that, had plaintiff known of the agreement, he would not have consented to a transfer of its rights to Dilek. In light of these allegations, DR&A has not met its burden on its waiver defense.

Turning now to the legal malpractice claim, we find that the motion court properly allowed the cause of action for legal malpractice to proceed. A viable claim for legal malpractice requires that a complaint allege " 'the negligence of the attorney; that

the negligence was the proximate cause of the loss sustained; and actual damages'" (*O'Callaghan v Brunelle*, 84 AD3d 581, 582 [1st Dept 2011], *lv denied* 18 NY3d 804 [2012], quoting *Leder v Spiegel*, 31 AD3d 266, 267 [2006], *affd* 9 NY3d 836 [2007], *cert denied* 552 US 1257 [2008]). Here, the logic for the legal malpractice cause of action is similar to the logic in sustaining the breach of contract claim: whether decedent had rights under the Rent Stabilization Code is beside the point for purposes of the pleadings here. The relevant issue is not whether decedent had rights to the rent-stabilized apartment but whether decedent had rights to his two shares under the retainer agreement. Indeed, plaintiff does not argue that but for DR&A's negligence, the estate would have prevailed in the article 78 proceeding; he argues that DR&A failed to tell him about the existence of the retainer agreement and to make sure that the estate received the settlement monies to which it was entitled under the settlement agreement.

The affidavits in support of the complaint assert, among other things, that had attorney Rozenholc informed plaintiff of the retainer agreement's terms, plaintiff would not have agreed to any settlement that resulted in no money to the estate. The affidavits also state that "but for" attorney Rozenholc's failure to properly advise the estate of its rights under the retainer, plaintiff "would not have consented to the settlement in its final form but rather would have insisted on payment of the two shares from the total proceeds." These averments, in addition to the allegations of the complaint, are sufficient to state a claim for legal malpractice.

We have considered the parties' remaining arguments, including plaintiff's remaining arguments for affirmative relief, and find them unavailing. Concur—Sweeny, J.P., Renwick, Moskowitz, Feinman and Kapnick, JJ.