(October 11, 2016)

■ In the Matter of LEON POKOIK et al., Appellants, v 575 REALTIES, INC., et al., Respondents. [38 NYS3d 553]—

Order, Supreme Court, New York County (Jeffrey K. Oing, J.), entered November 4, 2015, which, insofar as appealed from, denied petitioners' motion to renew, unanimously reversed, on the law, without costs, the motion granted, and upon renewal, so much of the judgment, same court and Justice, entered on or about October 2, 2015, which denied the petition brought pursuant to CPLR article 78 to inspect certain records of respondent Steinberg & Pokoik Management Corp. (SPMC) vacated, and the petition granted. Appeal from order entered on or about October 2, 2015, unanimously dismissed, without costs, as academic.

In this appeal, we consider whether petitioners' right to inspect the books and records of respondent 575 Realties, Inc. (575) relating to salaries and compensation, pursuant to Business Corporation Law § 624 or the common law, should include the right to inspect the books and records of respondent SPMC, 575's wholly owned subsidiary. Stating that 575's financial statements listed salaries of in excess of $2 million per annum for the company and its subsidiaries but did not provide an itemized breakdown, petitioners claim that they have a valid purpose for their request—namely, to investigate possible fiduciary mismanagement and wasteful dissipation of corporate assets through the payment of excessive salaries and compensation.

The motion court granted the petition with respect to 575's records but denied the request to inspect SPMC's records on the ground that petitioners are not direct shareholders of SPMC. Thereafter, 575's counsel advised petitioners' counsel that 575 was "not in possession of [any] documents which are responsive to [p]etitioners' requests."

Based on 575's failure to produce any responsive records, petitioners moved to renew. The motion court denied the motion on the ground that petitioners had not produced any new facts that would change its original decision, even though in rendering that decision the court had stated as follows: "I would think at this point the petitioner[s] would get the . . . books and records from 575 Realties[.] [Petitioners] will look them over. If they believe they need further information or further records, . . . they will probably at this point have sufficient

documentation to make the connection to say that, Judge, guess what, we need the other documents now and here is why. You can point to it."

"Under New York law, shareholders have both statutory and common-law rights to inspect a corporation's books and records so long as the shareholders seek the inspection in good faith and for a valid purpose" (*Retirement Plan for Gen. Empls. of the City of N. Miami Beach v McGraw-Hill Cos., Inc.*, 120 AD3d 1052, 1055 [1st Dept 2014]; *Matter of Crane Co. v Anaconda Co.*, 39 NY2d 14, 19-20 [1976]; *Matter of Peterborough Corp. v Karl Ehmer, Inc.*, 215 AD2d 663, 664 [2d Dept 1995]). Furthermore, "because the common-law right of inspection is broader than the statutory right, petitioners are entitled to inspect books and records beyond the specific materials delineated in Business Corporation Law § 624 (b) and (e)" (*McGraw-Hill* at 1056).

Petitioners' concerns about board mismanagement and excessive expenditures and wasteful dissipation of corporate assets are, on their face, a proper purpose, "even if the inspection ultimately establishes that the board had engaged in no wrongdoing" (*id.*). While respondents maintain that petitioners did not tender any evidence to suggest that corporate formalities were not followed between 575 and SPMC, they do not refute petitioners' assertions that SPMC is the wholly owned subsidiary of 575, in which petitioner Leon Pokoik Family Partners, LP holds shares, and that 575 and SPMC share office space and management and are dominated by certain family members who control the affairs of multiple family businesses. Significantly, 575's counsel advised petitioners' counsel that "575 . . . has no employees; has no payroll; pays no salaries; pays no workers' compensation insurance; and, issues no W-2 forms . . . [and] has no books or records reflecting salaries paid by 575 . . . to any individual or entity"—which leaves petitioners with no source other than SPMC for the information they seek. Furthermore, petitioners' requests are narrowly related to salaries and compensation and there has been no showing that requiring SPMC to produce the records would impose any undue burden.

Under these circumstances, petitioners have made a sufficient showing to establish their common-law right to inspect the books and records of SPMC, 575's wholly owned subsidiary, relating to salary and compensation (*see McGraw-Hill*, 120 AD3d 1052 [reversing order denying petition to inspect the respondent's books and records pertaining to the alleged wrongful conduct of its wholly owned subsidiary]; *Matter of Bluhdorn*

*v Greenwald Indus.*, 12 AD2d 662 [2d Dept 1960] [affirming order granting petitions to inspect and examine the books and records of a holding corporation and of five of its wholly owned subsidiary corporations]; *see also State ex rel. Brown v III Invs., Inc.*, 188 SW3d 1, 6 [Mo Ct App 2006] ["We do not believe that day-to-day control of a company's operations is necessary to compel an examination of a subsidiary's corporate books by a parent-company shareholder"]; *Danziger v Luse*, 103 Ohio St 3d 337, 341, 815 NE2d 658, 662 [2004] ["(W)e adopt the majority rule and hold that, in Ohio, shareholders have a right at common law to inspect the records of a wholly owned subsidiary of the corporation in which they own stock when the parent corporation so controls and dominates the subsidiary that the separate corporate existence of the subsidiary should be disregarded"]).

Respondents' argument that the right to inspect extends only to the shareholders of the corporation whose books and records they seek to inspect would allow respondents to shield their alleged misdeeds from scrutiny, as the books and records of SPMC would never be discoverable by anyone other than 575's board of directors. It also fails to give due consideration to the relationship between a parent and its wholly owned subsidiary. For example, where the parent controls the subsidiary, a shareholder may bring a "double" derivative action "not only for wrongs inflicted directly on the corporation in which he holds stock, but for wrongs done to that corporation's subsidiaries which make indirect, but nonetheless real, impact upon the parent corporation and its stockholders" (*Kaufman v Wolfson*, 1 AD2d 555, 556-557 [1st Dept 1956]; *see Ascot Fund Ltd. v UBS PaineWebber, Inc.*, 28 AD3d 313, 314-315 [1st Dept 2006]). Concur—Tom, J.P., Mazzarelli, Andrias, Manzanet-Daniels and Gesmer, JJ.