| |
|---|
| **Dixie v Scheer** |
| 2025 NY Slip Op 30167(U) |
| January 11, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 654690/2022 |
| Judge: Andrea Masley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

-----------------------------------------------------------------------------------X

DINO DIXIE, on his own behalf and
derivatively as a member of NEW AMSTERDAM
DISTRIBUTORS, LLC and TERRIODIOL
OHIO LLC,

| | |
|---|---|
| **INDEX NO.** | 654690/2022 |
| **MOTION DATE** | N/A |
| **MOTION SEQ. NO.** | 001 |

Plaintiffs,

- v -

JEFFREY SCHEER and BOND and SCHOENECK &
KING, PLLC,

**DECISION + ORDER ON
MOTION**

Defendants[1].

-----------------------------------------------------------------------------------X

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 44, 45, 46

were read on this motion to/for                       DISMISSAL                        .

In motion sequence number 001, defendants Jeffrey Scheer, Esq. and Bond,

Schoeneck & King, PLLC (BSK) move pursuant to CPLR 3211(a) (1), (3), (5), and (7) to

dismiss the complaint.

**Background**

Unless indicated otherwise, the following facts are taken from the complaint and,

for the purposes of this motion, are accepted as true.

Plaintiff Dino Dixie brings this action individually and derivatively on behalf of

New Amsterdam Distributors, LLC (NAD) and Terriodiol Ohio LLC (TO).  Dixie alleges

---

[1] Robert Daino and Acreage Holdings, Inc. (Acreage) were originally named as
defendants.  (See NYSCEF 1, Complaint.)  Dixie, Daino, and Acreage entered into a
settlement agreement and the action was discontinued as to those defendants.
(NYSCEF 6, Stipulation of Discontinuance.)

that he was a founding member of NAD, which through NYCI Holding, LLC (NYCI) owned a 50% interest in nonparty NYCANNA LLC. (NYSCEF 1, Complaint ¶¶ 2, 20, 28.) NAD is the sole shareholder of NYCI. (*Id.* ¶ 28.) Dixie's ownership interest in NAD is 13%. (*Id.* ¶ 2.)

In May 2015, NAD and nonparty EPMMNY, LLC discussed the formation of a partnership to jointly pursue a medical cannabis license.[2] (*Id.* ¶ 9.) NAD retained defendants Sheer and BSK to provide legal services, including the formation of NYCANNA for the purpose of pursuing the license. (*Id.* ¶ 10.) Upon NYCANNA's formation, Scheer and BSK "simultaneously became attorneys for NAD, NYCI, and NYCANNA." (*Id.*)

On November 20, 2016, Scheer sent NAD's principals notice that NYCANNA was merging with nonparty NY Medicinal Research and Caring, LLC (NYMRC) to assist with financing. (*Id.* ¶ 13.) NYMRC was owned by nonparty High Street Capital Partners (High Street). (*Id.*) High Street is Acreage's predecessor.[3] This merger allegedly diluted Dixie's equity interest as it substantially divested NAD's members of their ownership interests. (*Id.* ¶ 14.) Specifically, Dixie alleges that Scheer and BSK conspired with the incoming investors, including NYMRC, NYCI, and Acreage, to divest NAD of its interest in NYCANNA. (*Id.*)

---

[2] In November 2018, EPMMNY commenced an action against, amongst others, NAD and its members. (*EPMMNY LLC v NYCANNA LLC, et al.*, Index No. 655480/2018 (Masley, J.). In that action, EPMMNY alleges that it has a 25% non-dilutable equity and management right in New York Canna Inc. (restructured as NYCANNA) and the defendants in that action are depriving EPMMNY of that interest.

[3] "High Street officially changed its name to Acreage Holdings, Inc. on November 14, 2018." (NYSCEF 1, Complaint ¶ 28.)

**654690/2022  DIXIE, DINO vs. DAINO, ROBERT J ET AL**
**Motion No.  001**

Page 2 of 16

2 of 16

[* 2]

In May 2017, the New York State Department of Health awarded a medical marijuana license to NYCANNA. (*Id.* ¶ 16.) Thereafter, Scheer introduced Dixie to Daino, who had an existing relationship with Scheer. (*Id.* ¶ 17.) At Scheer's recommendation, Daino became a member and manager of NAD despite not having experience in the industry. (*Id.*) Dixie alleges he was sidelined as Scheer and Daino essentially took over NAD. (*Id.* ¶ 19.)

"In May 2018, NYCI sold its fifty percent interest in NYCANNA to High Street." (*Id.* ¶ 20.) Dixie alleges that Scheer structured the transaction so that High Street/Acreage acquired all of NYCANNA's equity. (*Id.*) NAD's officers, including Dixie were removed as NYCANNA's management, leaving it a mere shell company. (*Id.*) This transaction came about after Daino met with representatives from High Street. After this meeting, Daino informed Dixie "that there was going to be a $2 million cash call, and that if he did not meet the call by investing the necessary cash, his percentage ownership in NYCANNA would be reduced." (*Id.* ¶ 22.) Daino then presented an alternative to the cash call – selling NYCANNA to High Street/Acreage Holdings. (*Id.* ¶ 23.) "Daino said that the transaction needed to be approved by the NYCANNA shareholders within 8 hours" and represented that the value of the "transaction would be approximately $40 million based on the stock valuation." (*Id.*) The consideration for the sale of NYCI's interest in NYCANNA to High Street/Acreage was cash and stock in Acreage. (*Id.* ¶ 20 [NYCI sold its in interest "in exchange for cash and class D units of High Street"].)

Dixie alleges that Scheer violated his fiduciary duty to the NAD members by falsely advising that the transaction was favorable to NYCANNA, NYCI and NAD, and

654690/2022    DIXIE, DINO vs. DAINO, ROBERT J ET AL    Page 3 of 16
Motion No.  001

3 of 16

immediate approval was necessary, depriving them "of the opportunity to conduct a proper due diligence investigation of the proposed transaction." (*Id.* ¶ 25.) Dixie and the other NAD members approved the transaction based upon Daino and Scheer's representations. (*Id.*)

On September 25, 2018, High Street/Acreage announced it would go public in Canada by performing a reverse takeover of a publicly traded entity, nonparty Applied Inventions Management Corp. (*Id.* ¶ 27.) "As a part of the transaction, a 6-month lockup period governed High Street/Acreage shares." (*Id.*) On November 15, 2018, High Street/Acreage went public, starting the lockup period. (*Id.* ¶ 28.) The lockup period had three phases, "ending on May 15, 2019, as follows: (a) First 2 months (until January 15, 2019): all Acreage shares were to be locked up; (b) Next 2 months (January 15, 2019 to March 14, 2019): 5% of Acreage shares could be transferred; and (c) Next 2 months (March 15, 2019 to May 14, 2019): Another 15% of Acreage shares could be transferred." (*Id.* ¶ 34.) Scheer estimated Acreage's stock "would be worth about $24 per share during the course of this redemption period." (*Id.* ¶ 35.) However, right before the first tranche of stock was eligible for release, Scheer informed the NAD members that their shares were not going to be released, blaming such on the failure by some NAD members to sign additional necessary paperwork. (*Id.* ¶ 36.) Those members signed the additional documents but delays still occurred. (*Id.* ¶¶ 37-38.)

On March 25, 2019, NYCI's board of managers held a special meeting to authorize the transfer of 20% of Acreage's shares from NYCI to NAD. (*Id.* ¶ 39.) They also "authorized the transfer of all Acreage shares due to Daino (through an entity) from NYCI to the entity's name." (*Id.*) After further delay, on April 16, 2019, Scheer emailed

**654690/2022 DIXIE, DINO vs. DAINO, ROBERT J ET AL** Page 4 of 16
**Motion No. 001**

4 of 16

Acreage, seeking transfer of the Acreage shares to the NAD members. (*Id.* ¶ 39.) Acreage responded that "more than a letter was needed before a transfer of shares could be approved." (*Id.* ¶ 43.) On April 25, 2019, Scheer sent an email to NYCI's board of managers "stating that the initial NYCI authorization to transfer shares did not meet Acreage's requirements, and that that the NYCI Board of Directors needed to specifically approve the distribution directly from NYCI to the NAD members." (*Id.* ¶ 44.) Dixie alleges further delay in the transfer, which caused him to miss the opportunity to sell his shares during an Acreage stock rally in April 2019. (*Id.* ¶¶ 45-48.) The stock reached a high of $24.13 per share, but it was not until September 2019 that Dixie received 50% of his shares; the stock value at that point was around $2 a share. (*Id.* ¶¶ 48, 50.) "Only in March 2022 did Dixie receive the balance of his stock transfer at barely over penny stock value." (*Id.* ¶ 55.)

Dixie alleges that Scheer engaged in similar conduct with respect to a venture in Ohio. Dixie alleges that he was also a founding member of TO which was formed in 2018 to apply for a medical marijuana license in Ohio. (*Id.* ¶ 57.) Scheer once again brought in Daino to run TO. (*Id.*) Dixie alleges that, without his knowledge, Daino arranged a sale of TO's pending license to another company for $20 million. (*Id.* ¶ 59.) The deal fell through. (*Id.*) TO entered into a new deal with another company, and again, Dixie's was not made aware of the proposed transaction for approximately a year.[4] (*Id.* ¶ 60.) It is alleged that Scheer drafted all the documents related to this transaction. (*Id.*)

---

[4] It is unclear to the court whether this transaction closed as the complaint is silent.

**654690/2022 DIXIE, DINO vs. DAINO, ROBERT J ET AL** **Page 5 of 16**
**Motion No. 001**

Dixie asserts claims for breach of fiduciary duty, a derivative claim on behalf of NAD pursuant to Business Corporation Law (BCL) § 626 for legal malpractice, breach the implied covenant of good faith and fair dealing, unjust enrichment, and fraud against Sheer and BSK as well as a derivative claim on behalf of TO pursuant to BCL § 626 for breach of fiduciary duty and negligence against Scheer.

## Discussion

Breach of Fiduciary Duty

Dixie alleges that Scheer and BSK owed a fiduciary duty to Dixie and NAD's other members and breached that duty by (1) "failing to diligently pursue the necessary process for transferring Acreage shares from NYCI to Dixie and other individual members of NAD once the NYCI Board of Managers authorized it" and (2) giving "erroneous tax advice regarding the purported tax consequences of transferring the Acreage stock into their own individual names." (NYSCEF 1, Complaint ¶¶ 65-66.)

Scheer and BSK assert that this cause of action is time barred as any claim in connection with the alleged delay in the transfer of Acreage stock accrued on May 15, 2019. There is a dispute whether the three- or six-year statute of limitations applies.

> "New York law does not provide a single statute of limitations for breach of fiduciary duty claims. Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks. Where the remedy sought is purely monetary in nature, courts construe the suit as alleging "injury to property" within the meaning of CPLR 214 (4), which has a three-year limitations period. Where, however, the relief sought is equitable in nature, the six-year limitations period of CPLR 213 (1) applies. Moreover, where an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations under CPLR 213 (8)." (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 139 [2009] [citations omitted].)

Dixie asserts that the six-year limitations period applies, because his claim for unjust enrichment is equitable. However, the only relief sought in the complaint is monetary. (See NYSCEF 1, Complaint at 23.) Dixie argues that he will be seeking disgorgement of profits and legal fees as the result of the breach, but he has not amended his complaint to include such relief. A three-year statute of limitations applies where a plaintiff "seeks purely monetary relief, not equitable relief for which an award of monetary damages would not be adequate." (*VA Mgt., LP v Estate of Valvani*, 192 AD3d 615, 615 [1st Dept 2021].) Where a plaintiff uses "the term 'disgorgement' instead of other equally applicable terms such as repayment, recoupment, refund, or reimbursement," it "should not be permitted to distort the nature of the claim so as to expand the applicable limitations period from three years to six." (*Access Point Med., LLC v Mandell*, 106 AD3d 40, 44 [1st Dept 2013]; *see also VA Mgt., LP*, 192 AD3d at 615 [stating that "[p]laintiff's characterization of that relief as 'disgorgement' of [defendant's] compensation does not convert it into a claim for equitable relief to which the six-year statute of limitations would apply" (citations omitted)].)

Also unavailing is Dixie's assertion that the breach of fiduciary claim is rooted in fraud. The breach of fiduciary duty claim is based on two alleged actions - "failing to diligently pursue the necessary process for transferring the Acreage shares" and giving "erroneous tax advice." (NYSCEF 1, Complaint ¶¶ 65-66.) Although Dixie argues in his opposition brief that Scheer and BSK induced Dixie to authorize and sign off on the mergers without informing him of the terms or conditions of such, that conduct is not alleged in connection with the breach of fiduciary duty claim. The conduct that is alleged involves "allegedly impaired professional judgment;" this claim as plead is not

**654690/2022  DIXIE, DINO vs. DAINO, ROBERT J ET AL**
**Motion No. 001**

Page 7 of 16

7 of 16

[* 7]

essentially a fraud claim.  (*See Access Point Med., LLC*, 106 AD3d at 44 [citation omitted].)  Nevertheless, despite alleging a separate cause of action for fraud, the complaint is devoid of any allegation that Dixie "justifiably relied on any misrepresentation."  (*VA Mgt., LP*, 192 AD3d at 616 [citation omitted] [declining to apply the six-year limitations period where plaintiff failed to allege justifiable reliance]; *see also Lama Holding Co. v Smith Barney Inc.*, 88 NY2d 413, 421 [1996] [stating elements of fraud cause of action are "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (citations omitted)].)  Thus, the three-year statute of limitations applies.

     "On a motion to dismiss a cause of action pursuant to CPLR 3211 (a) (5) on the ground that it is barred by the statute of limitations, a defendant bears the initial burden of establishing, prima facie, that the time in which to sue has expired. To meet its burden, the defendant must establish, inter alia, when the plaintiff's cause of action accrued."  (*Lebedev v Blavatnik*, 144 AD3d 24, 28 [1st Dept 2016] [internal quotation marks and citations omitted].)  "A breach of fiduciary duty claim accrues where the fiduciary openly repudiates his or her obligation—i.e., once damages are sustained."  (*Id.* at 28 [citation omitted].)  "To determine timeliness, [the court] consider[s] whether plaintiff's complaint must, as a matter of law, be read to allege damages suffered so early as to render the claim time-barred."  (*IDT Corp.*, 12 NY3d at 140.)

     Dixie alleges that he and the other NAD members were damaged as a result of the delay in the transfer of the Acreage stock.  (NYSCEF 1, Complaint ¶ 67.)  Scheer

and BSK assert any alleged damages were incurred on May 15, 2019, the end of the lockup period and date Dixie received his shares of the Acreage stock. In the complaint, Dixie alleges that, by September 2019, only 50% of the Acreage stock had been released to him and remaining 50% was released in March 2022. (*Id.* ¶¶ 50, 55.) He alleges that Scheer's delay caused Dixie to miss the opportunity to sell the Acreage stock while it was at a high at the end of April 2019, but he also alleges that, when his shares were finally released to him in September 2019 and March 2022, they were worth around $2 and "barely over penny stock value," respectively. (*Id.* ¶¶ 48, 50, 55.) Thus, based on the allegations in the complaint, Dixie first sustained damages when he did not have his shares once the lockup period ended on May 15, 2019.

This is not a situation where the continuing wrong doctrine applies. "Where there is a series of continuing wrongs, the continuing wrong doctrine tolls the limitation period until the date of the commission of the last wrongful act. (*Palmeri v Willkie Farr & Gallagher LLP*, 156 AD3d 564, 568 [1st Dept 2017] [citations omitted].) "The doctrine 'may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct. The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs.'" (*Henry v Bank of Am.*, 147 AD3d 599, 601 [1st Dept 2017] [citations omitted].) Here, there is one alleged tortious act – Scheer's delay in transferring the stock to Dixie – which first occurred at the end of the lockup on May 15, 2019. "The doctrine is inapplicable where there is one tortious act complained of since the cause of action accrues in those cases at the time that the wrongful act first injured plaintiff and it does not change as a result of 'continuing consequential damages.'" (*Id.* [citations omitted].) Although the single alleged action of

654690/2022   DIXIE, DINO vs. DAINO, ROBERT J ET AL
Motion No. 001

Page 9 of 16

delay may have caused a continuing increase in damages, the continuing wrong doctrine does not apply. (*Id.* at 601-602 ["where a plaintiff asserts a single breach—with damages increasing as the breach continued—the continuing wrong theory does not apply" (citations omitted)].) The claim to the extent it is based on defendants' alleged failure "to diligently pursue the necessary process for transferring Acreage shares from NYCI to Dixie and other individual members of NAD once the NYCI Board of Managers authorized it" is dismissed. (NYSCEF 1, Complaint ¶ 65)

Scheer and BSK do not address the timeliness of this claim to the extent it is based on their alleged "erroneous tax advice regarding the purported tax consequences of transferring the Acreage stock into their own individual names." (NYSCEF 1, Complaint ¶ 66.) Thus, the claim to the extent it is based on this alleged conduct is sustained.

Legal Malpractice Claim Derivatively on Behalf of NAD (BCL § 626)

In support of NAD's legal malpractice claim, Dixie alleges that Scheer and BSK "deviated from the minimum standard of care expected of an attorney or law firm ... and are ... liable for legal malpractice and professional negligence in that, among other things, they improperly exercised favoritism, bias and conflict of interest in favor of defendant Daino with regard to the structuring of legal transactions involving NAD, NYCI and Acreage." (NYSCEF 1, Complaint ¶ 70.)

Scheer and BSK assert that Dixie fails to sufficiently allege that he made a demand on NAD's managers as required for a derivative claim. They further assert that the documentary evidence shows the transaction with Acreage was negotiated by NAD's managers and the managers approved proceeding with the transaction. Finally,

**654690/2022 DIXIE, DINO vs. DAINO, ROBERT J ET AL** Page 10 of 16
Motion No. 001

10 of 16

[* 10]

they argue that Dixie fails to allege how NAD was damaged; rather, Dixie alleges that

he was damaged.

*Demand*

> Dixie alleges that he

> "has requested of the various members of the Board of Directors of NAD
> that these legal malpractice claims should be brought by NAD against
> Scheer and BS&K, but the Board members have refused to take such
> action. Two Board members, constituting a voting majority of the Board,
> have made it clear to Plaintiff that they would not support litigation to
> resolve these claims. Any further efforts or demands that the NAD Board
> of Directors bring these claims would clearly be futile." (*Id.* ¶ 70.)

Scheer and BSK argue that this allegation lacks the required particularity.  In

response, Dixie submits an affidavit to supplement the complaint.  (*Ackerman v*

*305 E. 40th Owners Corp.*, 189 AD2d 665, 666 [1st Dept 1993] [holding that "a

court may consider affidavit facts as a supplement to the complaint"].)  Dixie

avers that

> "I spoke to John Vavalo, the original founding member of NAD and to
> Dominic Falcone, together the majority owners of NAD, on numerous
> occasions, urging them to bring a lawsuit against Scheer, BS&K and
> others on behalf of NAD. Early on they were very supportive of the lawsuit.
> However, when it came time to actually file a complaint, after months of
> discussions, they said that they opposed such a lawsuit because, even
> though our claims were meritorious, they believed that any such litigation
> might be detrimental to other matters in which Scheer and BS&K were
> involved. After a substantial number of these conversations with them
> proved to be fruitless, I realized that it was futile to continue to try to
> persuade them that it was in NAD's best interests to file a complaint
> against these Defendants on behalf of NAD and its members." (NYSCEF
> 35, Dixie aff ¶ 43.)

> "Business Corporation Law § 626 (c) provides that in a shareholders'
> derivative suit, 'the complaint shall set forth with particularity the efforts of
> the plaintiff to secure the initiation of such action by the board or *the*
> *reasons for not making such effort*.'  In New York, to overcome a motion to
> dismiss for failure to plead demand futility, a plaintiff must have alleged
> 'with particularity that (1) a majority of the directors are interested in the

**654690/2022   DIXIE, DINO vs. DAINO, ROBERT J ET AL**
**Motion No.  001**

Page 11 of 16

11 of 16

[* 11]

transaction, or (2) the directors failed to inform themselves to a degree reasonably necessary about the transaction, or (3) the directors failed to exercise their business judgment in approving the transaction.'" (*Goldstein v Bass*, 138 AD3d 556, 556-557 [1st Dept 2016], quoting *Marx v Akers*, 88 NY2d 189, 198 [1996] [emphasis added].)

Although Dixie's affidavit is not the most detailed, he does identify "who made the demands," to "which Board members they were made",[5] "the content of the demands" and "why the Board refused to take action." (*Tomczak v Trepel*, 283 AD2 229, 230 [1st Dept 2001].) This is sufficient to plead demand futility.

*Legal Malpractice*

"A viable claim for legal malpractice requires that a complaint allege the negligence of the attorney; that the negligence was the proximate cause of the loss sustained; and actual damages." (*Russo v Rozenholc*, 130 AD3d 492, 496-497 [1st Dept 2015] [internal quotation marks and citations omitted].) "A plaintiff asserting a derivative claim seeks to recover for injury to the business entity." (*Yudell v Gilbert*, 99 AD3d 108, 113 [1st Dept 2012].)

Here, the complaint is devoid of any allegations that defendants' negligence was the proximate cause of any loss sustained by NAD. Further, Dixie alleges that he was damaged by the malpractice and not NAD. Both are fatal. This claim is dismissed without prejudice with leave to replead within 20 days of the date of this decision or waived.

---

[5] Scheer and BSK argue that Dixie identifies Vavalo and Falcone only as majority owners not board members. However, the minutes of the Special Meeting of NAD's Board Members identify Vavalo and Falcone as members of the Board. (NYSCEF 39, NAD's Board Minutes.)

Breach the Implied Covenant of Good Faith and Fair Dealing

"No implied covenant of good faith and fair dealing arises in the absence of a contract." (*King Penguin Opportunity Fund III, LLC v Spectrum Group Mgt. LLC*, 187 AD3d 688, 690 [1st Dept 2020] [citations omitted].)  Dixie fails to allege that the existence of a contract between himself, Scheer, and BSK.  This claim is dismissed.

Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." (*Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 [2012] [internal quotation marks and citations omitted].)  Dixie's sole allegation is "[a]s a result of the tortious acts complained of herein, defendants were unjustly enriched... ." (NYSCEF 1, Complaint ¶ 82.)  In his affidavit, Dixie avers that Scheer made $600,000 from Acreage and hundreds of thousands from the Ohio transaction and that Scheer and BSK received millions in attorneys' fees.  (NYSCEF 35, Dixie aff ¶ 40.)  However, Dixie fails to allege how receipt of any monies was unjust and that it would be against equity for defendants to retain such payments.  Further, this claim is plead as individual and not derivative, and Dixie fails to allege how paying Scheer and BSK fees[6] was at Dixie's expense.  This claim is dismissed.

---

[6] The court notes that the retainer agreement is between NAD and BSK.  (NYSCEF 9, Retainer Agreement.)  There are no allegations that Dixie personally made any fee payments.

**654690/2022  DIXIE, DINO vs. DAINO, ROBERT J ET AL**
**Motion No.  001**

Fraud

"To state a claim for fraud, a plaintiff must allege misrepresentation or concealment of a material fact, falsity, scienter by the wrongdoer, justifiable reliance on the deception, and resulting injury." (*Zanett Lombardier, Ltd. v Maslow*, 29 AD3d 495, 495 [1st Dept 2006] [citation omitted].) Pursuant to CPLR 3016 (b), such claim must be plead with particularity. As previously stated, the complaint is devoid of any allegation that Dixie justifiably relied on any misrepresentation by Scheer and/or BSK. This claim is dismissed without prejudice to replead within 20 days of the date of this order or waived.

Breach of Fiduciary Duty and Negligence derivatively on behalf of TO (BCL § 626)

Scheer and BSK move to dismiss this claim on the ground that Dixie cannot bring a derivative claim on behalf of TO because he is not a member of TO. Dixie does not dispute this; rather, he avers that he is a member of nonparty Terradiol Management, LLC (TM), which is the sole member of TO. (NYSCEF 35, Dixie aff ¶¶ 30, 44.)

"[W]here the parent controls the subsidiary, a shareholder may bring a 'double' derivative action 'not only for wrongs inflicted directly on the corporation in which he holds stock, but for wrongs done to that corporation's subsidiaries which make indirect, but nonetheless real, impact upon the parent corporation and its stockholders.'" (*Matter of Pokoik v 575 Realties, Inc.*, 143 AD3d 487, 489 [1st Dept 2016] [citations omitted].) A double derivative action "may be maintained '[w]here a stockholder controls a subsidiary [such that] ... there is no independence between the parent stockholder and the subsidiary, [and] it cannot be expected that the controlling stockholder will authorize a suit on behalf of the subsidiary against itself for harm to the subsidiary.'" (*Simon v*

654690/2022   DIXIE, DINO vs. DAINO, ROBERT J ET AL
Motion No. 001

Page 14 of 16

14 of 16

*French-American Surgery Ctr., Inc.*, 2018 NY Slip Op 32184[U], *17 [Sup Ct, NY County 2018], quoting *Pessin v Chris-Craft Indus.*, 181 AD2d 66, 72 [1st Dept 1992]; *see also Miller v Suky*, 2018 NY Slip Op 31374[U], *12 [Sup Ct, NY County 2018].) Dixie has sufficiently supplemented the complaint to allege he is a member of TM, which in turn controls TO as the sole member. He also sufficiently alleges that he went to Vavalo and Falcone, the majority members of TM, to demand TM bring a lawsuit against Scheer on behalf of TO to no avail. (NYSCEF 35, Dixie aff ¶ 44.) Thus, this claim is sustained.

Accordingly, it is

ORDERED that the defendant's motion to dismiss is granted with respect to the claims for breach of fiduciary duty to the extent it is based on defendants' alleged failure to diligently transfer the Acreage shares, breach the implied covenant of good faith and fair dealing, unjust enrichment, and fraud, as well as the derivative claim on behalf of NAD pursuant to BCL § 626 for legal malpractice and is otherwise denied; and it is further

ORDERED that these claims are dismissed; and it is further

ORDERED that plaintiff is granted leave to serve and file an amended complaint repleading the claims for fraud in compliance with CPLR 3016 (b) and the derivative claim on behalf of NAD pursuant to BCL § 626 for legal malpractice; and it is further

ORDERED that the amended complaint shall be served and filed within 20 days of the date of this decision and order; and it is further

**654690/2022   DIXIE, DINO vs. DAINO, ROBERT J ET AL**
**Motion No.  001**

Page 15 of 16

ORDERED that, if plaintiff fails to serve and file an amended complaint in conformity with the deadline set forth herein, leave to replead shall be deemed denied and those causes of action shall be dismissed.

2025011220843AMASLEY3216EB663F434A38AEE9AC9708BC8334

**1/11/2025**
**DATE**

**ANDREA MASLEY, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | **X** | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | **X** | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

654690/2022   DIXIE, DINO vs. DAINO, ROBERT J ET AL
Motion No.  001

Page 16 of 16

16 of 16